576 F.2d 12
 Veronica JONES and Robert Jones, on behalf of themselves and
all others similarly situated, Plaintiffs-Appellants,
v.
Joseph A. CALIFANO, Secretary of Health, Education and
Welfare, Bernice L. Bernstein, Director, Region II,
Department of Health, Education and Welfare, and Joseph J.
Kelly, Commissioner, Social Security Administration, New
York Region, Defendants-Appellees.
 No. 268, Docket 77-6116.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 28, 1977.
Decided April 14, 1978.
 
 Lloyd Constantine, Brooklyn, N. Y. (John C. Gray, Jr., Brooklyn Legal Services, Brooklyn, N. Y., and Maurie Heims, Onondaga Neighborhood Legal Services, Inc., Syracuse, N. Y., and Rene Reixach, Greater Upstate Law Project, Rochester, N. Y., of counsel), for plaintiffs-appellants.
 Nathaniel L. Gerber, Asst. U. S. Atty., S. D. N. Y., New York City (Robert F. Fiske, Jr., U. S. Atty., and Patrick H. Barth, Asst. U. S. Atty., S. D. N. Y., New York City, of counsel), for defendants-appellees.
 Before WATERMAN, MOORE and GURFEIN, Circuit Judges.
 GURFEIN, Circuit Judge:
 
 
 1
 This appeal involves an interplay between the Federal Supplemental Security Income Law ("SSI") the national cash assistance plan for needy persons who are also disabled, blind, or aged, 42 U.S.C. §§ 1381 et seq. (Title XVI of the Social Security Act) and the statute providing for Aid to Families with Dependent Children ("AFDC") as administered by the State of New York, 42 U.S.C. §§ 601 et seq. (Title IV of the Social Security Act); New York Social Services Law §§ 131 et seq. When a person who is part of a family which has been receiving AFDC aid becomes eligible for SSI cash benefits, his entitlement to SSI benefits begins with the month of his application, 42 U.S.C. § 1382(c) (2). Hence, when the disabled applicant is ultimately found eligible for SSI, he is entitled to claim retroactive benefits from the date of his application. A claimant found eligible for SSI who received AFDC aid during the SSI determination period is entitled to the relevant SSI payment level less certain income received, which includes the amount of AFDC received by the claimant during the period, 42 U.S.C. § 1382(b).[1]
 
 
 2
 The statute does not specify how much of the amount paid to a family unit under AFDC during the period while the application is being considered by SSA is to be deemed to have been received by the newly eligible SSI recipient during the retroactive period. In the case of New York State residents, to determine what portion of the family unit AFDC benefit was attributable to the new SSI beneficiary, the Secretary of Health, Education and Welfare takes the number of persons in the family unit, and simply subtracts for SSI purposes, the share which the new SSI recipient purportedly received on a "per capita basis." He ignores the fact that the difference between the AFDC benefits received during the retroactive period and what the family unit actually gets after the family member goes on the SSI rolls is not a per capita difference. The plaintiffs contend that an "incremental", rather than per capita method, must be used in calculating retroactive benefits; they argue that the actual difference between what the family unit received under AFDC before one member became eligible for SSI, and what the family unit received thereafter is the proper amount to be attributed to the particular claimant.
 
 
 3
 This action for declaratory and injunctive relief arising under subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. and 28 U.S.C. § 2201 was begun in the Southern District of New York. Jurisdiction was alleged under 42 U.S.C. § 1383(c)(3) and 28 U.S.C. § 1361.[2] Plaintiffs Veronica and Robert Jones sued on behalf of themselves and all similarly situated recipients of and applicants for SSI benefits who have, or will, receive deficient SSI payments by virtue of defendant's use of an illegal method for computing retroactive SSI benefits. The defendants are the Secretary of HEW, the Director of Region II, and the Commissioner of the Social Security Administration, New York Region. New York State officials are not parties to this action.
 
 
 4
 The plaintiffs moved for class certification and for summary judgment on December 10, 1976. The defendants moved to dismiss the complaint. The District Court (Hon. Kevin Duffy, Judge ) found that the plaintiffs' substantive claim was "meritorious" and "not disputed" but that he was constrained by "the state of the law" to hold that the Court was without jurisdiction to entertain the claim.
 
 
 5
 Judge Duffy held that the plaintiffs' failure to exhaust available administrative remedies, as required by 42 U.S.C. § 405(g) would bar them from proceeding under either 42 U.S.C. § 1383(c)(3), which applies § 405(g) to Title XVI, or the mandamus statute, 42 U.S.C. § 1381. The District Court emphasized that the utility of the exhaustion requirement was particularly apparent in this action since other SSI claimants had received the relief sought here through individual pursuit of their administrative remedies.[3] The District Court denied plaintiffs' motions for summary judgment and class certification and entered judgment dismissing the complaint on June 8, 1977. The court did, however, retain jurisdiction until September 6, 1977 to allow the Secretary to give Mrs. Jones an administrative hearing, in default of which the court would entertain a motion to vacate the dismissal of the complaint. On July 26, after a hearing, an Administrative Law Judge rendered a decision which favored Mrs. Jones' method of computation and awarded her retroactive benefits. Notice of appeal to this court had already been filed on July 17, 1977.
 
 
 6
 The conclusion of the District Court that the plaintiffs' claim was "meritorious" is, we think, correct. Appellant Veronica Jones is a disabled recipient of SSI who received AFDC benefits from January to June 1976, the period during which SSA was determining her eligibility for SSI. In June, the Social Security Administration ("SSA") determined that she was eligible for SSI benefits, retroactive to January, the month of her application. During this SSI determination period, Mrs. Jones and her two children received $348.50 per month in AFDC payments. When Mrs. Jones began receiving SSI, she was removed from the AFDC grant as required by law, 42 U.S.C. § 602(a)(24), infra ; New York Social Services Law, 18 Code of Regs. § 352.30(b).[4] This resulted in a monthly decrease of $57.50 monthly in the AFDC grant, from $348.50 to $291.00, a decrease of only 16.5% rather than of 331/3% (the per capita percentage). Accordingly, if she actually had been receiving SSI benefits from January, the month of her application, the AFDC payment to the remaining family unit would have been reduced by only $57.50. Yet, in computing her retroactive benefits from January to June, SSA determined that one-third of the $348.50 monthly grant, or $116.00 rather than the $57.50 was attributable to her as income from the AFDC payments, and was deductible from her SSI entitlement. This was avowedly done in accordance with a purported per capita method of determining AFDC attribution based on an expressed belief that New York State uses the per capita method in its AFDC program. The Joneses requested reconsideration from SSA, contending that only $57.50 monthly of the family AFDC income was legally attributable to Veronica. SSA reconsidered but adhered to its challenged per capita method.
 
 
 7
 Appellants' proposed class is composed of two sub-classes: (a) SSI recipients who have received reduced retroactive SSI benefits because of the use of the per capita method; and (b) AFDC recipients who have applied for SSI benefits, are waiting SSA determination of eligibility and who, if eligible, will receive reduced retroactive benefits because SSA uses the per capita method with respect to New York State residents.
 
 
 8
 The statute, 42 U.S.C. § 602(a)(24), provides:
 
 
 9
 "a) A State plan for aid and services to needy families with children must
 
 
 10
 "24) (provide that) if an individual is receiving benefits under subchapter XVI of this chapter (SSI), then, for the period for which such benefits are received, such individual shall not be regarded as a member of a family for purposes of determining the amount of the benefits of the family under this subchapter (AFDC) and his income and resources shall not be counted as income and resources of a family under this subchapter."
 
 
 11
 There is no explanation of how much of the total AFDC family grant is to be attributed to a family member for the interval pending determination of his SSI eligibility.
 
 
 12
 The Secretary's policy has been to request from the State agency administering the AFDC program the information needed to determine what share of an AFDC grant should be attributed to the SSI beneficiary, Supplemental Security Income Claims Manual, Dep't of HEW § 12340.1. When a State defines the attributable amount as the difference between the AFDC grant before and after the exclusion of the SSI recipient, the incremental method of computation is used. When the State declines to give the information requested, or, like New York State, declares an alleged "policy" that the individual needs of each family member are considered equal, the Secretary assumes that all members have shared equally in the AFDC grant, and he then employs the per capita method.[5] The "policy" letter of the New York Department of Social Services on which the Secretary relies is set out in the margin.[6] The letter in the margin is both general and misleading. We take it to mean simply that New York does not allocate differing amounts of benefits based on an individual's position in the household. That general interpretation is consistent with the author's own subsequent construction of his letter: "It does not contain any reference to SSI, to AFDC transferees into the SSI program, or to any formula or method to be used by SSA in computing SSI benefits or deductions therefrom." Affidavit of John W. Hickey filed in Sutton v. Califano, 77 Civ. 4223 (S.D.N.Y.), called to our attention by the United States Attorney.
 
 
 13
 The Appeals Council of the SSA on three separate occasions has held that the per capita method is invalid and that the proper means for attributing income is the incremental method, which reflects the actual difference between the amount of AFDC benefit granted to a family unit including the SSI beneficiary, and the amount of the benefit to the family unit after the beneficiary's withdrawal therefrom. The first of these decisions, In re Irma R., came down more than two years ago, on February 18, 1976; the second, In re Gonzalez, was rendered on March 29, 1976; and the third, In re Sutton, was handed down on December 13, 1977, after this appeal was argued.[7]
 
 
 14
 If we add Mrs. Jones' own success before the Administrative Law Judge noted above, the quasi-judicial branch of the SSA has, on four occasions, disagreed with the Secretary; yet the Secretary has not altered the method by which retroactive benefits are calculated. We thus face the rather novel question of whether judicial relief is available where all eligible SSI claimants, who are by definition needy, are required to exhaust their administrative remedies on an individual basis in order to receive benefits which the SSA's own Appeals Council has consistently ruled must be given them. The issue is whether a federal court is powerless to prevent the Secretary from insisting upon the sterile gesture of individual exhaustion when the result appears to be a foregone conclusion.
 
 
 15
 On the merits, we agree with the unanimous administrative determinations. When the SSI member finally leaves the family unit, the family gets a reduced sum which takes into account his withdrawal. That reduced sum is the measure of what was attributable to his share of the family benefit; it reflects his "incremental" contribution to the family grant. If that sum is a correct determination of prospective benefits, there is no reason why a different method should be used in calculating retroactive benefits for the period while eligibility was being determined.
 
 
 16
 In defense of his position, the Secretary reasons syllogistically that (1) because New York "uses" the per capita method in its administration of AFDC, (2) "the breadth of the state's discretion" must be recognized, and cites Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), as support. Yet as we have seen, the major premise is wrong. New York State does not itself use the per capita method to diminish the family's AFDC grant when one member of the family unit dies or becomes eligible for SSI benefits.
 
 
 17
 Having determined that the Secretary's method is wrong, we face the issue of whether the District Court had jurisdiction to review his action. There is no federal-question jurisdiction in an action which seeks to recover claimed benefits under Title II of the Social Security Act because of 42 U.S.C. § 405(h).[8] Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).
 
 
 18
 For purposes of this appeal, we consider the only avenue for judicial review to be 42 U.S.C. § 405(g) which requires, as a jurisdictional prerequisite, exhaustion of the administrative remedies provided under the Act. Mathews v. Eldridge, 424 U.S. 319, 327, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
 
 Section 405(g) in part provides:
 
 19
 "Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow."
 
 
 20
 Section 405(g) assumes as a condition for judicial review that the determination by the Secretary after a § 405(b) hearing will be adverse to the claimant of benefits. It makes no provision for judicial review of a determination favorable to the complainant. That is normally to be expected, but it fails to take into account a situation in which the Appeals Council consistently rules in favor of claimants and the Secretary refuses to implement the method of benefit calculation adopted by his Appeals Council. Such a situation leads to unequal justice. Those who request a hearing will get their full benefits; those who fail to request a hearing will not.
 
 
 21
 The Supreme Court has interpreted the "final decision" requirement of § 405(g) as encompassing two elements: (1) a requirement, not waivable by the Secretary, that a claim for benefits has been presented; and (2) a requirement that the administrative review procedures prescribed by the Secretary be exhausted, waivable either by action of the Secretary or through a court-imposed waiver. Mathews v. Eldridge, supra, 424 U.S. at 328, 96 S.Ct. 893; Weinberger v. Salfi, supra. It is undisputed that appellants, by filing claims with the SSA, have satisfied the non-waivable requirement. With respect to the waivable requirement, the District Court concluded upon careful consideration of Weinberger v. Salfi, supra, and Mathews v. Eldridge, supra, that appellants had not raised a constitutional claim that would justify implying waiver of the exhaustion requirement. Unlike plaintiffs in Salfi they had not alleged that a statute or rule was unconstitutional on its face, nor had they challenged an agency-wide policy as violative of a specific constitutional standard as in Eldridge. The District Court viewed appellants' complaint as an attack based on the Supremacy Clause which "though nominally constitutional is well within the agency's expertise." We appreciate the careful consideration given by Judge Duffy, but we view the problem in a somewhat different way.
 
 
 22
 As the Supreme Court in Eldridge observed,
 
 
 23
 "(i)t is unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context. The Secretary would not be required even to consider such a challenge." 424 U.S. at 330, 96 S.Ct. at 900.
 
 
 24
 We think that the rationale of Eldridge supports the conclusion in this case, as well, that "a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." Mathews v. Eldridge, supra, 424 U.S. at 330, 96 S.Ct. at 900.
 
 
 25
 We recognize that the Supreme Court has explained Salfi and Eldridge as cases where the claimants challenged the Secretary's decisions on constitutional grounds. See Califano v. Sanders, 430 U.S. 99, 108-09, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Here as well we believe that reliance by the Secretary on an alleged state "policy" which is inconsistent with the federal statute concerning a purely federal benefit program raises a "colorable constitutional claim" under the Supremacy Clause, 430 U.S. at 109, 97 S.Ct. 980. Moreover, in view of the particular circumstances of this case, the Secretary's refusal to follow the rulings of his own Appeals Council raises colorable questions of equal protection and due process.[9]
 
 
 26
 The Secretary apparently believes that federalism justifies his reliance on state policy in executing the SSI statute. But New York applies no such policy, nor does it have any interest in the SSI program which is administered exclusively as a federal program and to which the state contributes nothing. The reliance on Dandridge v. Williams, supra, and the application of federalism to the issue is, in our view, misguided. It improperly subjects claimants for federal benefits to a state policy which does not, as a practical matter exist. The SSA does not look to see what each state actually deducts from AFDC benefits when the SSI eligible is excluded. As a result of present policy, SSI eligibles who were formerly part of an AFDC program are capriciously treated in different ways in a purely federal program depending on what policy the state they come from appears to declare. The measure of SSI benefits is purely a question of federal law, and Dandridge v. Williams is irrelevant to that question.
 
 
 27
 We note also that the Secretary has had ample opportunity since the decision below to modify his position to conform to the Appeals Council rulings. Instead, during the pendency of this appeal, he has distributed new forms to the New York State agencies which state explicitly that the per capita method is to be used.[10] We agree with the Third Circuit that a "final position" by the Secretary may, in some circumstances, amount to a "final decision." Liberty Alliance of the Blind v. Califano, 568 F.2d 333 p. 346 (3d Cir. 1977).[11] We find that under the circumstances here there is subject-matter jurisdiction in the District Court.
 
 
 28
 By declining to alter his regulations in spite of successive decisions by the Appeals Council, the Secretary is forcing claimants to proceed by the tedious method of adjudicating their claims on an individual basis, even though eligibility is conceded. There is no provision for class relief in the administrative process under SSI-Title XVI.[12] Thus, if we were to hold that the District Court lacks jurisdiction, the Secretary would be permitted to require each individual separately to exhaust his administrative remedies. Assuming that the Appeals Council continues to rule in favor of claimants, judicial review could be foreclosed entirely. The SSA could operate indefinitely, as it does now, with two standards of benefit calculation, one for claimants who seek review by the Appeals Council, and one for claimants who do not. By doing nothing the Secretary could effectively evade judicial review for the many claimants who fail to contest the per capita method.
 
 
 29
 Such a result would scarcely comport with the "basic human claim that the law should provide like treatment under like circumstances." Friendly, Federal Administrative Agencies, 19 (1962). Although agencies are not inflexibly bound by the rule of stare decisis, cf. N. L. R. B. v. Wyman-Gordon Co., 394 U.S. 759, 765-66, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969), neither is their discretion unlimited. Thus, courts have imposed a "duty of consistency toward similarly situated taxpayers", Sirbo Holdings, Inc. v. C. I. R., 476 F.2d 981, 987 (2d Cir. 1973), and have held that agencies may not "treat similar situations in dissimilar ways," Garrett v. F. C. C., 168 U.S.App.D.C. 266, 270, 513 F.2d 1056, 1060 (1975), quoting Burinskas v. N. L. R. B., 123 U.S.App.D.C. 143, 148, 357 F.2d 822, 827 (1966). See Davis, Administrative Law Treatise, § 1707-4 pp. 413-16 and cases cited (Supp. 1976).
 
 
 30
 A fundamental of justice is equality of treatment. We need not debate whether this is a product of natural law or simply a pragmatic gloss on the meaning of democratic institutions. We know that in a unitary court system it is not stare decisis alone that binds the structure, but also a recognition that like treatment is the touchstone. When the administrative process becomes bifurcated, as when independent administrative judges interpret statutes in adjudicated cases that may not technically bind the Secretary, care must be taken lest certain needy beneficiaries, because of the limitations of poverty or ignorance, fail to receive the full amount of benefits to which they are entitled. Thus, we find it appropriate to imply a waiver of the exhaustion requirement when, as in this case, there is a stalemate defying judicial review.
 
 
 31
 The situation here is reminiscent of that which confronted the Supreme Court in another administrative context in Southern Pacific Terminal Co. v. I. C. C., 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), where consideration of the orders of the ICC "ought not to be, as they might be, defeated, by short term(s) orders, capable of repetition, yet evading review . . . ." Though the issue in Southern Pacific was whether there was a "case or controversy," the policy ground for assuming jurisdiction was, as it is here, that a strict interpretation would entirely frustrate judicial review. Here it is contended that there is no subject-matter jurisdiction because the Secretary has not made a "final decision" which is within his power to withhold in case after case, thus "evading review."
 
 
 32
 We may find analogy in other cases in which claims of mootness were rejected, such as Nebraska Press Association v. Stuart, 427 U.S. 539, 546-47, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) (short-lived restraining orders capable of repetition); Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (termination of pregnancy); accord, Doe v. Bolton, 410 U.S. 179, 187, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) (burden on future elections); Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 179, 89 S.Ct. 347, 350, 21 L.Ed.2d 325 (1968) ("the continuing activities and program of petitioners"). See Goldberg v. Kelly, 397 U.S. 254, 256-57, n.2, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The rationale of all these cases is that judicial review cannot be entirely foreclosed by the fortuity of a termination of the individual grievance. The test is whether petitioners are adversely affected by government "without a chance of redress." Southern Pacific Terminal Co. v. I. C. C., supra, 219 U.S. at 515, 31 S.Ct. 279. See Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 121-27, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974) (declaratory judgment available though economic labor dispute had ended); Frost v. Weinberger, 515 F.2d 57, 62-65 (2d Cir. 1975).
 
 
 33
 For poor and disabled people, time is a precious commodity even when the amounts involved are small. To require each claimant to pursue his individual administrative remedy is to vindicate no legitimate agency interest when the only disputed issue is one of statutory construction.[13] In this unusual case where a statutory interpretation can be universally applied to all eligible claimants, an exception to case-by-case exhaustion is appropriate.
 
 
 34
 We, accordingly, assimilate the posture of claimants Jones here to the posture of claimant Eldridge. We hold that the exhaustion requirement of § 405(g) has been constructively waived by the position taken by the Secretary, and that therefore the District Court has subject-matter jurisdiction.[14] We limit our holding to the combination of circumstances here present: the erroneous reliance on the purported computation by the State; the evasion of review; the unwarranted reliance on federalism which implicates the Supremacy Clause; and the at least colorable constitutional violations of due process and equal protection of the laws. We go no further in limiting the scope of § 405(g).
 
 
 35
 We consider next whether the granting of full relief to the named plaintiffs moots the claim of the class. Sub-class A consists of persons formerly part of a family unit which obtained benefits under AFDC, who have filed claims with SSA, who have been determined to be eligible, but who have been paid a deficient retroactive grant. Sub-class B consists of AFDC recipients who have filed claims but whose eligibility has not yet been determined. By filing claims, plaintiffs in both classes have satisfied the nonwaivable requirement of § 405(g). Judge Duffy found it unnecessary to certify either class because he was dismissing the complaint. On the remand, he should consider whether to certify sub-class A. As for plaintiffs in sub-class B, whose eligibility has not yet been determined in conformance with § 405(h), class certification would be inappropriate. Plaintiffs in sub-class A, however, had been deemed eligible for benefits already; the only issue remaining is one of statutory interpretation by which method of AFDC attribution should retroactive SSI benefits be calculated.
 
 
 36
 Our holding on this point is consistent with decisions of two circuits which have addressed the question of class relief under § 405(g). In Jimenez v. Weinberger, 523 F.2d 689 (7th Cir. 1975), cert. denied, 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976), the Seventh Circuit held that since § 405(g) conferred jurisdiction on the District Court to hear timely claims by each member of the class, Rule 23 would afford a procedure by which such jurisdiction could be exercised in a single proceeding and that unnamed as well as named plaintiffs could be deemed "applicants before the court" in a proper class action.[15] With reference to a passage in Weinberger v. Salfi, supra, 422 U.S. at 763, 95 S.Ct. at 2466, where the Court specified "a final decision of the Secretary made after a hearing" as a prerequisite for judicial review, then Judge (now Justice) Steven noted:
 
 
 37
 "Salfi makes it clear that the 'made after a hearing' language may be disregarded if the Secretary's decision rested on a legal ground that did not necessitate any hearing."
 
 
 38
 Jimenez v. Weinberger, supra, 523 F.2d at 695, n.10. In this case, the sole controverted issue for sub-class A claimants concerns a legal ground that does not necessitate individualized hearings. And as the Third Circuit has recently held,
 
 
 39
 "the need for (individual) calculations is no reason for barring class relief with respect to the common legal issue which will determine the formula under which these calculations will be made."
 
 
 40
 Liberty Alliance of the Blind, supra, 568 F.2d at pp. 346-347. We agree also with Judge Gibbons' formulation in Liberty Alliance of the rule to be applied in § 405(g) actions:
 
 
 41
 "The issues which the Court should have focused on are (1) whether an identifiable class of claimants had filed with the Secretary claims which presented a common legal issue on which the administrative agency had taken a final position and (2) whether the party seeking judicial review is an adequate representative for that class of (blind) claimants." 568 F.2d p. 347.
 
 
 42
 We hold, accordingly, that certification of sub-class A is not proscribed, and the District Court should consider the propriety of class certification in the light of this opinion. Nor does the agency's grant of relief to the named plaintiffs Jones, who had alleged a substantial controversy, moot the case since they moved for class certification before the administrative relief was granted. White v. Mathews, 559 F.2d 852, 856-57 (2d Cir. 1977). See Sosna v. Iowa, 419 U.S. 393, at 402, n.11, 95 S.Ct. 553, 42 L.Ed.2d 532.
 
 
 43
 Since, in this unusual situation, we have been required to consider the statutory meaning on the merits in order to decide whether there is subject-matter jurisdiction, the District Court may accordingly shape its remedy in conformity with this opinion.
 
 
 44
 The judgment dismissing the complaint is reversed and the case is remanded to the District Court for further proceedings consistent with this opinion.
 
 
 
 [1]
 To be eligible for SSI, an individual must be aged, blind, or disabled, and have income and resources not in excess of amounts prescribed by statute, 42 U.S.C. § 1382(a). If an individual otherwise eligible for SSI has earned or unearned income, his SSI benefit will be reduced by the amount of that income unless the income falls within certain specified exceptions. 42 U.S.C. § 1382(b)(1). AFDC payments are not specifically excepted. 42 U.S.C. § 1382a(b)
 
 
 [2]
 The complaint as originally filed also alleged jurisdiction under the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. After the Supreme Court's decision in Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), plaintiffs withdrew their claim that the APA furnished an alternative basis of jurisdiction
 
 
 [3]
 See In re Irma R. (February 18, 1976) and In re Gonzalez (March 29, 1976), discussed infra p. 17
 
 
 [4]
 Section 352.30(b) provides: "A person in receipt of SSI shall not be regarded as a member of a household for the purpose of determining need and amount of assistance."
 
 
 [5]
 At the time when the Jones' benefits were calculated, the SSA's policy was to use a per capita attribution method for all New York residents. SSA Regional Program Circular No. 74-27 (November 19, 1974) (New York Region) (item 6). SSA's current practice is to request information from a local New York Department of Social Service office as to the total monthly family AFDC grant and the number of individuals included in the family. The form requesting information contains the statement: "The needs attributable to the claimant represent a pro-rata share of the family's grant." AFDC/SSI Inter-Agency Request, SSI-23 (NY), February 1978, published as Exhibit A to Social Security Claims Manual Regional Supplement, SSI/AFDC Payment Co-ordination, R 12340.1 et seq. (February, 1978)
 
 
 [6]
 "(LETTERHEAD OF)
 "STATE OF NEW YORK
 DEPARTMENT OF SOCIAL SERVICES
 1410 Mission Avenue, Albany 12243
 November 25, 1975
 "Mr. Peter P. DiSturco
 Regional Planning Officer
 Department of Health, Education and Welfare Region II
 Federal Building
 
 
 [26]
 Federal Plaza
 New York, NY 10007
 "ATTENTION. Ms. Sharon Snyder
 "Dear Mr. DiSturco:
 "This is in response to your request for a statement of Department policy concerning the apportionment of the public assistance grant to the members of an ADC household.
 "In determining eligibility and degree of need for an ADC family, it is the policy of New York State that the individual needs of each family member are equal. The needs attributable to a member of the household represent a pro-rata share of the total family needs. For example, in a four (4) person ADC household the needs of one child would be deemed to be one-quarter (1/4) of the needs of the four person ADC household.
 "I trust this clarifies this policy for you.
 "Sincerely,
 (signed JOHN W. HICKEY)
 John W. Hickey
 "ATTENTION: Jim Clayton
 "ATTENTION: Litigations Staff"
 
 
 [7]
 Sutton is a named plaintiff in another action in the Southern District, Sutton v. Califano, 77 Civ. 4423 (CSH), and is a member of the class in this action. In Irma R. and in Jones, the SSI eligible was the mother; in Gonzalez, a child was the SSI "eligible"; the Appeals Council treated the applications on the same basis in Irma R. and Gonzalez
 
 
 [8]
 42 U.S.C. § 405(h) provides:
 "The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 of Title 28 to recover on any claim arising under this subchapter."
 Section 1383(c)(3) incorporates § 405(g) of Title II into Title XVI.
 
 
 [9]
 In Mathews v. Eldridge, supra, 424 U.S. at 335, 96 S.Ct. at 903, the Supreme Court stated that:
 "identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."
 In this case, first, there is a private interest that will be affected by the official action; second, as we have seen, there could be an erroneous deprivation of such interest through the stalemate discussed in the text, and the finding of jurisdiction will have value; and third, the decision turns solely on statutory interpretation and will not burden the administrative process unduly.
 
 
 [10]
 AFDC/SSI, Inter-Agency Request, SSI-23 (NY), February 1978, published as Exhibit A to Social Security Claims Manual Regional Supplement, SSI/AFDC Payment Coordination, R 12340.1 et seq. (February, 1978), quoted in note 5 supra. We take judicial notice of the distribution of this form. American Legion Post No. 90 v. First National Bank & Trust Co., 133 F.2d 868, 872 (2d Cir. 1940)
 
 
 [11]
 Liberty Alliance holds that even on a purely statutory question, the test should be whether the Secretary has taken a final position on the matter. 568 F.2d at p. 346
 
 
 [12]
 This case is thus distinguishable from Association of American Medical Colleges v. Califano, 569 F.2d 101 (D.C.Cir. 1977). There, none of the members of appellant Association had made an attempt to challenge the regulations at issue under the administrative review procedures provided, notwithstanding the fact that § 1395oo (b) of the Medicare Act authorized administrative review by groups of providers when the claims in controversy involved a common question of fact or interpretation of law. 569 at p. 107 n.60, p. 110 & n.76
 
 
 [13]
 Moreover, as the Court in Salfi recognized, once claimants have presented their claims at a sufficiently high level of review to satisfy the agency's administrative needs, further exhaustion would involve "a commitment of administrative resources unsupported by any administrative or judicial interest." 422 U.S. at 766, 95 S.Ct. at 2467
 
 
 [14]
 Given the result reached, we need not decide whether a limited mandamus would lie as in White v. Mathews, 559 F.2d 852 (2d Cir. 1977), or would not lie. See Association of Medical Colleges v. Califano, supra, 569 F.2d at 110-114
 
 
 [15]
 In Jimenez, the Seventh Circuit also held that the District Court acquired jurisdiction of the class action when the complaint was filed and that claims that were timely as of the date of filing were not thereafter barred by the statute of limitations. 523 F.2d at 696-97. Applying that analysis to the instant case, sub-class A consists of former AFDC recipients who have been deemed eligible for SSI and whose claims for recalculation of benefits would have been timely, when the complaint was filed, under 20 C.F.R. §§ 404.957 and 404.958 (1976)