Alan CROWE and Karen Crowe individ-
ually, and on Behalf of their minor
child, Sonja Crowe

v.

Margaret M. HECKLER, Secretary of
Health and Human Services, and Mar-
tha A. McSteen, Acting Commissioner
of Social Security.

Civ. A. No. 85–130.

United States District Court,
D. Vermont.

July 8, 1985.

Order July 11, 1985.

Dixie Henry, Vermont Development Dis-
abilities Project, Burlington, Vt., for plain-
tiffs.

Robert J. Triba, Asst. Regional Atty., Department of Health and Human Services, Boston, Mass., and George Terwilliger, Asst. U.S. Atty., D. Vt., Burlington, Vt., for defendants.

## OPINION AND ORDER

COFFRIN, Chief Judge.

Plaintiff Alan Crowe, his wife, Karen, and daughter, Sonja, have filed this action against Defendants Margaret Heckler and Martha A. McSteen, alleging that Defendants have wrongfully withheld the payment of interim dependent benefits pending the redetermination of Alan Crowe's disability status pursuant to the Social Security Disability Benefits Reform Act of 1984 (the Act). Defendant Heckler has moved to dismiss for lack of subject matter jurisdiction, or, in the alternative, for summary judgment. Plaintiff has filed a memorandum in opposition. Oral argument has been waived by the parties. For the reasons set forth below, Defendant's motions are DENIED.

### Facts

On October 23, 1979, Alan Crowe filed an application for disability insurance benefits. He was determined to be disabled and commenced receiving disability payments for the period of his disability, beginning September 30, 1977. Crowe's claim was later reviewed pursuant to the continuing disability investigation process, and it was determined that his disability had ceased. Crowe then requested a hearing before an ALJ which was heard on March 29, 1983.

Following the hearing, the ALJ concluded, in a decision dated June 21, 1983, that Crowe's disability had ceased, based on an analysis of the then current disability criteria (and without application of the medical improvement standard).[1] At the time his benefits were terminated, only Crowe himself had received benefits and no dependents were receiving benefits on his account. When the Appeals Council refused to review his claim on August 17, 1983, its decision became the final decision of the Secretary.

Crowe timely appealed the final decision of the Secretary to this Court, claiming that his disability benefits had been improperly terminated because of the Secretary's failure to apply a medical improvement standard. Before argument was scheduled, but after both parties had briefed the issue, Pub.L. 98–460 was signed into law in October, 1984, requiring that the case be remanded to the Secretary for a redetermination and that Crowe be given the opportunity to elect to receive benefits pending such redetermination. On October 31, 1984, the Hon. Franklin S. Billings, Jr., remanded the case to the Secretary.

In December 1984, two months after the remand, Crowe filed an election under section 2(e) of the Reform Act to receive interim benefits for himself and anyone qualified on his social security record pending a redetermination of the termination of his disability benefits. In June, 1983, Crowe had married his wife, Karen, and his child,

---

1. Under 42 U.S.C. § 425(a) (1983) the Secretary is authorized to terminate a claimant's disability benefits upon evidence that the disability has "ceased." The Secretary's interpretation of the statute has been that benefits may be terminated based only on substantial evidence that the claimant is not currently disabled, without regard to whether there has been medical improvement in the claimant's condition. The Secretary's view is inconsistent with case law in this circuit as well as in the majority of others. *De Leon v. Secretary of HHS,* 734 F.2d 930 (2d Cir.1984); *Kuzmin v. Schweiker,* 714 F.2d 1233 (3d Cir.1983); *Simpson v. Schweiker,* 691 F.2d 966 (11th Cir.1982); *Weber v. Harris,* 640 F.2d 176 (8th Cir.1981); *Cassiday v. Schweiker,* 663 F.2d 745 (7th Cir.1981); *Hayes v. Secretary of* *Health, Education and Welfare,* 656 F.2d 204 (6th Cir.1981); *Finnegan v. Matthews,* 641 F.2d 1340 (9th Cir.1981); *Miranda v. Secretary of Health, Education and Welfare,* 514 F.2d 996 (1st Cir.1975); *Rivas v. Weinberger,* 475 F.2d 255 (5th Cir.1973). Both the statute and the regulations promulgated thereunder suggest that a comparative standard should be used in deciding whether to terminate an individual's benefits, i.e., comparing the claimant's condition at the time of review with his condition at the time benefits were initially granted. Thus, these circuits have held that once a claimant has established that he is disabled, his disability status will not be terminated absent evidence of medical improvement.

Sonja, was born in May 1984. Under the Act, a wife of a disabled claimant may receive dependent benefits after one year of marriage.

In January, 1985, an issue arose as to the eligibility of his wife and child to receive dependent benefits pursuant to the remand. Plaintiffs' counsel contacted the U.S. Attorney for clarification regarding payment of dependent benefits pending remand. On January 22, 1985, the Montpelier, Vermont, Social Security District Office called Crowe and informed him that his benefits would be reinstated and that his wife and child were also eligible for benefits and would be paid.

During the months January, February and March, 1985, Crowe, as well as his wife and child, received benefits. In April, however, Crowe was paid benefits but his wife and daughter were not. The reason that benefits were not paid to the wife and daughter, according to the Social Security District Office, was a change in policy based on new instructions received by telephone. At that time plaintiffs' counsel was informed that it was the position of the Social Security Administration (the SSA) that no notice to Crowe was required when the dependent's benefit checks were stopped because they were paid due to an administrative error.

Plaintiffs then filed an action in this court seeking the restoration of benefits to Karen and Sonja. At a hearing held on May 10, 1985, on the issue of interim relief, the parties stipulated that Defendant would pay benefits to Karen and Sonja Crowe for the months of March and April, although the SSA in no way conceded Plaintiffs' claims of entitlement. Karen and Sonja were issued benefit checks for March and April, 1985. By letter dated May 18, 1985, the SSA sent Plaintiffs written notice of termination of the benefits for Karen and Sonja Crowe indicating therein that it was also paying the May benefits. The notice stated that the benefits may have been paid in error. It also advised Plaintiffs of their right to request reconsideration of the decision.

Defendant has moved to dismiss for lack of subject matter jurisdiction due to Plaintiffs' failure to exhaust the administrative remedies now available to them. Alternatively, they have moved for summary judgment, claiming that Karen and Sonja have no legal right under the SSA to the benefits they seek. Plaintiffs have filed an opposing memorandum.

### Discussion

In their complaint Plaintiffs assert that this court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and/or 28 U.S.C. § 1361 (mandamus). We do not address these claims as we are satisfied under the circumstances of this case that we have jurisdiction under 42 U.S.C. § 405(g).

I. *Jurisdiction under 42 U.S.C. § 405(g)*

Under section 405(g), a claimant may seek judicial review after a "final decision" has been rendered by the Secretary. The "final decision" requirement has been held to consist of two elements: 1) the nonwaivable requirement that a claim for benefits has been presented to the Secretary and 2) a waivable requirement that the claimant has exhausted his administrative remedies. *Mathews v. Eldridge*, 424 U.S. 319, 328–30, 96 S.Ct. 893, 899–900, 47 L.Ed.2d 18 (1976); *Weinberger v. Salfi*, 422 U.S. 749, 764–65, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975); *City of New York v. Heckler*, 742 F.2d 729, 734 (2d Cir.1984).

Since Plaintiffs clearly have satisfied the presentment requirement, our analysis will focus on whether Plaintiffs have satisfied the exhaustion requirement.

Defendant contends that Plaintiffs have not exhausted their administrative remedies because Karen and Sonja Crowe can appeal this decision through appropriate SSA channels as indicated by the termination notice of May 18, 1985. Although we agree with Defendant that Plaintiffs have not exhausted the administrative procedures available to them, we think that the facts of this case warrant a conclusion

that waiver of the exhaustion requirement is appropriate.

■ The exhaustion requirement may be waived, either by the Secretary, *Weinberger v. Salfi, supra,* 422 U.S. at 766–67, 95 S.Ct. at 2467, or in appropriate circumstances, by the courts, *Mathews v. Diaz,* 426 U.S. 67, 76–77, 96 S.Ct. 1883, 1889–90, 48 L.Ed.2d 478 (1975). The Supreme Court has approved judicial waiver where plaintiffs legal claims are collateral to the demand for benefits, where exhaustion would be a futile gesture, or where the harm suffered in the interim would be irreparable in the sense that no *post hoc* relief would be adequate. *City of New York, supra,* at 736, *comparing Mathews v. Eldridge, supra* (exhaustion waived) *with Heckler v. Ringer, supra,* (1984); 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (exhaustion not waived).

Because the Court failed to state whether each of the factors—futility, collaterality, and irreparable harm—must be present before a court may waive the exhaustion requirement, the Second Circuit, in the absence of clear guidance has adopted the position that "no one factor is critical." *City of New York, supra,* at 736, *citing Smith v. Schweiker,* 709 F.2d 777, 780 (2d Cir.1983). The Second Circuit's approach is to "balanc[e] the competing considerations to arrive at a just result under the circumstances presented." *Id.* We think that the adoption of the Second Circuit approach indicates waiver of exhaustion in this case because Plaintiffs have shown both that their claim is collateral to Plaintiff Alan Crowe's claim for benefits and that they would suffer irreparable harm in a way that cannot be remedied by the later payment of benefits.

### A. *Collaterality*

The Defendant contends that Plaintiffs claims are not collateral to Plaintiff Alan Crowe's claim for benefits, but are clearly claims for benefits. Therefore, they contend that judicial waiver of exhaustion in this instance is inappropriate.

■ We disagree. Plaintiffs are not requesting this court to rule on the claimant's underlying claim for benefits. Rather, they raise an unrelated question—whether Congress intended by Pub.L. 98–460 that dependents of disabled workers, not on the rolls at the time the disabled workers' benefits were terminated by the Secretary after she applied an improper standard, should, nevertheless, qualify for interim dependent benefits pending outcome of the disabled workers' underlying claims. Plaintiffs' request concerns the proper criteria and procedure for administering benefits pending the redetermination of Alan Crowe's disability status. Plaintiffs claim that this court's acceptance of jurisdiction over this matter would not involve it, in any way, with the determination of Alan Crowe's underlying claim. Moreover, they argue that, should Karen and Sonja prevail on the issue of interim dependent benefits, the Secretary would still be at liberty to terminate the payments upon a later finding that Alan Crowe is not disabled.

Although one can argue that Plaintiffs' claims are somewhat intertwined with Alan Crowe's claim for benefits, the fact that they are not "wholly" collateral, *see e.g., Mathews v. Eldridge, supra,* (constitutional issue raised was entirely collateral to underlying claim for benefits), however, does not mean that judicial waiver is necessarily precluded. The Second Circuit has held that where a plaintiff's claim is "substantially collateral to [his] entitlement to benefits," waiver is appropriate. *City of New York, supra,* at 737 (although plaintiff's claim that Secretary unlawfully failed to assess each claimant's residual functional capacity on an individual basis was not "wholly" collateral to plaintiff's claim for benefits, court held that judicial waiver was, nevertheless, appropriate because claim was "substantially" collateral).

Although Plaintiffs have not raised a constitutional claim wholly collateral to Alan Crowe's claim for benefits, we think that Karen and Sonja's claim for interim dependent benefits—which is a separate is-

sue regarding the statutory interpretation of Pub.L. 98–460—is substantially collateral to the underlying claim for benefits.

The Supreme Court has made a clear pronouncement that exhaustion requirements, when possible, should "be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered." *Mathews v. Eldridge, supra,* 424 U.S. at 331 n. 11, 96 S.Ct. at 901 n. 11. We think that Karen and Sonja's claims are substantially collateral and crucial to their immediate health and welfare. Accordingly, we find that judicial waiver of the exhaustion requirement is appropriate.

### B. *Irreparable Harm*

■ We turn next to Plaintiffs' assertion that requiring them to exhaust the recently offered administrative remedies would cause them irreparable harm which could not be adequately remedied with *post hoc* relief. Plaintiffs contend that waiver of exhaustion is appropriate in this circumstance because claimant, Alan Crowe, remains allegedly disabled and that, without interim dependent benefits, the family has insufficient means.[2] Testifying that he has no other income; no stocks, bonds, or real estate, Crowe claims that his family has suffered extreme financial hardship since Karen and Sonja's benefit checks stopped coming. *Id.,* at ¶ 26. We think that requiring Karen and Sonja to exhaust their administrative remedies would cause them irreparable harm because they are presently in dire financial straits. In addition, at the time of the hearing on May 10, 1985, Karen was pregnant and expecting a child the following month. According to an affidavit which she filed at that time, the family financial circumstances caused her to be nervous and anxious. She was particularly concerned about how the family would manage when the second child was born. Although not so stated in the affidavit her worries no doubt would be compounded by the birth of the new child because the infant plaintiff, Sonja, would be only a year old at that time.

In *Mathews v. Eldridge, supra,* at 331, 96 S.Ct. at 900, the Supreme Court held that judicial waiver of the exhaustion requirement was appropriate where a claimant whose disability benefits were terminated "ha[d] raised at least a colorable claim that because of his physical condition and dependency upon the disability benefits, an erroneous termination would damage him in a way not recompensable through retroactive payments." Other courts, when confronted with motions for preliminary injunctions, have also determined that retroactive payments do not make disability claimants whole because such individuals are frequently in dire financial circumstances. *Leschniok v. Heckler,* 713 F.2d 520, 524 (9th Cir.1983); *Caswell v. Califano,* 583 F.2d 9, 14 (1st Cir. 1978); *Dixon v. Heckler,* 589 F.Supp. 1494, 1509 (S.D.N.Y.). *Cf. City of New York v. Heckler, supra* (wrongful denials of disability benefits to persons with severe mental illnesses constituted irreparable harm which retroactive benefits could not recompense for their injury). In a similar vein, we think that, in the instant case, Plaintiffs' dependency on the benefits, together with the fact that retroactive payments could not remedy the harm suffered by them, indicates that judicial waiver of the exhaustion requirement is warranted.

---

**2.** In an affidavit submitted to the court, in support of Plaintiffs' application to bring this action *in forma pauperis,* Alan Crowe states that his disability check in the amount of $588 per month is insufficient to maintain the health and welfare of his family. Affidavit of Alan Crowe, at ¶ 23. His monthly expenditures are as follows:

| | |
|---|---|
| Rent | $138 |
| Electricity | 40 |
| Food | 200 |
| Milk | 20 |
| Car Payments | 82 |
| Insurance | 43 |
| Telephone | 35 |
| Cable | 10 |
| Soap, etc. | 10 |
| Diapers | 25 |
| Laundry | 10 |
| Gas | 50 |
| Clothes | 40 |
| | $703 |

*Id.,* at ¶ 25.

Another example of a situation where judicial waiver was proper is presented in *Jones v. Califano*, 576 F.2d 12, 20–21 (2d Cir.1978). *Jones* was a class action in which the Second Circuit noted the urgency of claimants' predicament where they alleged that the Secretary's resolution of conflicting federal assistance statutes resulted in their receipt of deficient disability benefits:

> For poor and disabled people, time is a precious commodity even when the amounts involved are small. To require each claimant to pursue his individual administrative remedy is to vindicate no legitimate agency interest when the only disputed issue is one of statutory construction.

*Id.*, at 20–21. Likewise, we think that, in a stalemate over the construction of the Act, as presented in the instant case, the scale tips toward waiver of the exhaustion requirement, especially in view of the fact that Plaintiffs' are needy and would suffer irreparable harm if they were forced to exhaust their administrative remedies.

Plaintiffs situation is clearly distinguishable from those cases in which courts have determined that claimants have suffered no irreparable harm. In *Bartlett v. Schweiker*, 719 F.2d 1059, 1061–62 (10th Cir.1983), the court held that recipients of disability benefits whose benefits were terminated failed to show irreparable harm where they asserted no allegations as to elements of irreparable harm and where they failed to make a showing of irreparable harm in response to defendant's motion to dismiss. Here, Alan Crowe's Affidavit demonstrates that Plaintiffs are suffering severe financial hardship and that they are unable to meet their daily needs.

In *Smith v. Schweiker, supra,* the court refused to waive the exhaustion requirement where a class of claimants, whose disability benefits had been terminated, would not suffer irreparable harm if forced to exhaust administrative remedies. At the hearing on this issue, the court observed that both the named plaintiffs and the intervenors were receiving benefits and were eligible to make claims for past losses, and also that future class claimants could receive continuing benefits pending the outcome of the appeal. In the instant case, however, Plaintiffs have only received dependent benefits for the period January to May, 1985, and the Defendant contends that she has no duty to pay further dependent benefits pending the outcome of Alan Crowe's disability claim. Moreover, the fact that Plaintiffs can make claims for past losses does not diminish the severity of their potential injury. Poor families, such as Plaintiffs, require money in-hand to satisfy their immediate personal and medical needs. Even if Alan Crowe's underlying claim is ultimately resolved in his favor, Plaintiffs do not have the luxury of postponing the receipt of interim dependent benefits until they can make claims for past losses.

We think that the Plaintiffs have clearly demonstrated that they may suffer irreparable harm if forced to exhaust their administrative remedies. Therefore, we think waiver of exhaustion is appropriate.

Having balanced the competing considerations, as required by *City of New York, supra,* and having found two grounds for which waiver is appropriate—collaterality and irreparable harm—we find we have subject matter jurisdiction over this action. Defendants' motion to dismiss is denied.

IV. *Defendant's Motion For Summary Judgment*

■ Plaintiffs assert that Congress provided that claimants, whose disability benefits were terminated by the Secretary as a result of the Secretary's application of an improper standard, may elect to receive interim benefits while the Secretary conducts a proper redetermination. Pub.L. 98–460. Section 2(e) of this law mandates that the Secretary pay interim benefits upon a claimant's election:

> Any individual whose case is remanded to the Secretary ... may elect ... to have payments made ... [s]uch payments (if elected)—(1) *shall* be made at least until an initial redetermination is

made by the Secretary; and (2) shall begin with the payment for the month in which such individual makes such an election.

(emphasis added). Plaintiffs claim that the right of a claimant whose case has been remanded pursuant to the Act to receive the interim payments arises when he or she elects to receive them. Thus, Plaintiffs assert, if, upon a claimant's election, he or she has a spouse and child who satisfy the eligibility requirements, then all three are entitled to the interim payments even though the claimant had no dependents at the time of termination.

As support for this interpretation, Plaintiff points to Section 2(e)'s reference to 42 U.S.C. § 423(g). Section 2(e) of the new law states that the claimant's election of benefits must be in accordance with Section 223(g) [42 U.S.C. § 423(g)]. That section provides that an individual "may elect *any other benefits* under this subchapter based on such individual's wages and self-employment income ..." 42 U.S.C. § 423(g)(1)(C). (emphasis supplied). Since such "other benefits" include payments to the wife and minor dependent children of a disabled worker, 42 U.S.C. § 402(b) and (d), and since the dependent benefits flow directly from the wage earner's entitlement to benefits, 20 CFR 404.330 *et seq.;* 404.350 *et seq.,* Plaintiffs claim that their right to dependent benefits is clear.

The Defendant, on the other hand, claims that Karen and Sonja Crowe are not entitled to receive the interim payments because they were not dependents on Alan Crowe's account in June, 1983—the month Mr. Crowe's disability benefits were terminated. The Secretary hinges her argument on the statutory language of 42 U.S.C. § 423(g). She contends that, in order to make an election to have benefits "*continu[e]* for an additional period," (emphasis added) an individual must have been receiving benefits prior to the election. Further, she asserts that, "there is nothing in the language of the Reform Act which would allow payments of interim benefits to *new* applicants prior to a determination that the wage earner is in fact disabled. Defendant's Memorandum, at 15, (emphasis in original).

For support, the Secretary relies on an unwritten policy of the Social Security Agency, and an internal SSA Program Operations Manual (POMS Manual). Prior to the issuance of the termination notice to Karen and Sonja, the Defendant terminated the interim dependent benefits after being informed by the Baltimore Regional Office that there existed an unwritten policy which was to be drafted into regulation, prohibiting the release of interim benefits to individuals not on the rolls at the time of the claimant's termination. The Secretary asserts that her actions are authorized by this unwritten policy. Defendant also claims that the SSA practice of holding back the processing of "apparently eligible" dependents, such as Karen and Sonja Crowe, until the determination of Alan Crowe's entitlement to disability benefits is authorized by an internal agency manual—the POMS Manual. POMS A00402.240D, Defendant's Attachment 3, at 3. With regard to the Secretary's first contention, an "unwritten policy" has no binding legal effect until it is drafted into regulation. With regard to her second assertion, Plaintiffs correctly point out that the POMS Manual is not a regulation and has no legal effect. *Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981).

Although neither the Second Circuit, nor the legislative history of the Act has *specifically* addressed the issue of whether those dependents who become dependents after the Secretary's decision, but prior to the end of the claimant's eligibility for continued payments, *see* 20 C.F.R. §§ 404.330 *et seq.,* 404.350 *et seq.,* may receive interim dependent benefits, we think that the intent of Congress, in enacting the provision for election of benefits pending appeal, is reasonably clear.

The legislative history of the Social Security Disability Benefits Reform Act of 1984, Pub.L. 98–460, emphasizes that the Act is for the purpose of reforming the system. 1984 U.S.Code Cong. & Admin. News, 90th Cong.2d Sess. 4, at 3039. Af-

ter observing that "[t]he disability insurance program has attracted substantial Congressional attention over the last two years, primarily because of the numbers of beneficiaries whose benefits have been terminated," the House Ways and Means Committee stated that it "believes that the process over the last several years has resulted in erroneous termination of benefits for at least some people." *Id.* One of the stated purposes of the bill is, "to clarify statutory guidelines for the determination process to insure that no beneficiary loses eligibility for benefits *as a result of careless or arbitrary decision-making by the Federal government.*" *Id.* Another stated purpose of the bill is, "to provide a *humane and understandable application and appeal process for disability applicants and beneficiaries appealing termination of their benefits. Id.* (emphasis supplied).

The new Reform Act provides on a "permanent basis" for the continuation of benefits during appeal in all CDI (continuing disability investigations) cases through the decision of the ALJ. *Id.* at 3055. The reason for the continuation of benefits is that the committee believes that "providing for continuation of payments during appeal helps considerably to ease the severe financial and emotional hardships that would other wise be suffered by disabled persons." *Id.* Although the legislative history does not include a clear statement about benefits to dependents of disabled workers, it seems that, from the spirit behind the legislation's continuation of benefits to disabled workers and from Section 2(e)'s requirement that benefits be administered in conjunction with section 423(g), it can be implied that the benefits flowing from a disabled worker to his dependents were meant to be awarded pending redetermination. Plaintiffs claim that Congress has presumptively reaffirmed Mr. Crowe's entitlement until the Secretary applies the proper legal standard.

We agree. The fact that Congress has decided to let terminated disabled workers receive interim benefits pending redetermination indicates that Congress did not want to place the financial hardship resulting from the Secretary's mistake on people who, after going through protracted Social Security determinations, hearings, redeterminations and appeals, had been determined to be disabled. It is important to recognize that this Reform Act is not aimed at initial disability applicants, but individuals who were at one time determined to be disabled. In remarks made from the Senate floor prior to passage of the Act, Senator Sasser expressed his concern for the plight of the terminated claimants and his hope that passage of the Act will help alleviate their situation:

> It was really administrative folly which precipitated these wholesale terminations and the cruel injustices that were worked on literally thousands of disabled Americans. It is hoped that [Pub.L. 48–960] albeit long overdue will redress these injustices.

130 Cong.Rec. 11,452 (1984).

Had the Secretary not applied an improper standard in the first place, then Alan Crowe would still be regarded as a disabled worker and, as soon as his wife and child satisfied the eligibility requirements, they would have been added to the rolls. Thus, for example, a wife has to be married to the claimant for one year before she is entitled to benefits, her rights would have vested in June 1984, one year after they had married. If claimant's status as disabled had not been terminated in June, 1983, then his wife would have been eligible for benefits in June, 1984—which is six months *before* Mr. Crowe applied for interim benefits. If at some time in the future the SSA finds that Mr. Crowe is still disabled, it will have to pay retroactive benefits to Karen Crowe, starting from June, 1984.

Bearing in mind the spirit of the new legislation, we turn back to the task of interpreting the statutory language. Under the new statute it is clear that Alan Crowe, whose benefits were terminated, may receive interim benefits pending appeal, or, as the statute reads, may have his benefits continued. We think that implicit in the word "benefits" is the notion of entitlement. As we read the statute, Alan Crowe may continue to receive those bene-

fits to which he is entitled. As referred to above, section 2(e) of the Act—the election of benefits provision—states that such election must be in accordance with 42 U.S.C. § 423(g). That provision, in turn, states that an individual "may elect any other benefits under this Act based on such individual's wages and self-employment income." 42 U.S.C. § 423(g)(1). Other benefits which flow from the *disabled worker's entitlement to benefits* include payments to the wife and minor dependent children of a disabled worker who satisfy the conditions provided in 42 U.S.C. § 402(b) and (d). Viewed in this way, Karen and Sonja Crowe are not "new" applicants as the Secretary contends, but are dependents of Alan Crowe whose benefits flow from Alan Crowe's status as a disabled worker. Since, at the time of the election, Alan and Karen Crowe had been married one year (as required by 20 C.F.R. § 404.330) and had a child, Sonja, who met the conditions in 20 C.F.R. § 404.350, we conclude that Karen and Sonja are entitled to the payment of interim dependent benefits.

We think it is reasonably clear that Congress did not want to place the enormous financial strain resulting from the Secretary's application of the wrong standard on the families of disabled workers. Certainly, Congress did not want to make their plight worse. Were we to hold otherwise, Alan Crowe's monthly disability check of $588 would be used to feed, clothe and house at least three, possibly four persons, instead of one. That result would be unfair and inconsistent with the spirit of the Act. Prior to the passage of the Act Senator Levin addressed his colleagues in the Senate, urging them to vote for its passage. In speaking about the problems with the disability program, he lamented that "[i]t has been so poorly administered, with no thought to our basic rules of reason, fairness, and compassion." 130 Cong.Rec. 11, 460 (1984). We think that Congress intended that the new Act be administered with reason, fairness, and compassion. Accordingly, we deny the Secretary's motion for summary judgment.

Since there is no pending motion for summary judgment for plaintiffs, no judgment may be entered for them at this time. However, in view of the disposition of Defendant's summary judgment motion a trial in this matter is not indicated. Summary judgment will be entered for the Plaintiffs if requested by them by appropriate motion. Such judgment will direct the Secretary to pay interim dependent benefits to the plaintiffs from June, 1985, until she makes an initial redetermination of Alan Crowe's eligibility for disabled workers' benefits.

### Conclusion

Defendant's Motion to Dismiss is DENIED. Defendant's Motion for Summary Judgment is DENIED.

### ORDER

Plaintiffs' Motion for Summary Judgment is granted. The Secretary shall pay interim dependent benefits to the plaintiffs from June, 1985, until she makes an initial redetermination of Alan Crowe's eligibility for disabled workers' benefits. The Clerk of Court shall enter judgment for the plaintiffs in accordance with this Order.