Myrna **FITZGERALD**

v.

Richard S. **SCHWEIKER, et al.**

Civ. No. Y–81–1623.

United States District Court,
D. of Maryland.

May 10, 1982.

Ethel Zelenske, and Dennis W. Carroll, Baltimore, Md., for plaintiff.

Glenda G. Gordon, Asst. U. S. Atty., Baltimore, Md., for defendants.

## MEMORANDUM OPINION AND ORDER

JOSEPH H. YOUNG, District Judge.

This action involves the interplay between the federal Supplemental Security Income (SSI) program and the Maryland Aid to Families with Dependent Children (AFDC) program. The basic issue is whether the method employed by defendants to calculate retroactive SSI benefits paid to recipients who received AFDC while their SSI applications were pending is lawful. This matter comes before the Court on plaintiffs' motion for class certification, defendants' motion to dismiss and cross motions for summary judgment.

SSI is the nation's cash assistance program for needy persons who are disabled, blind or aged. SSI is administered by the Social Security Administration pursuant to Title XVI of Social Security Act. 42 U.S.C. §§ 1381 *et seq.* For claimants determined eligible, entitlement to SSI benefits com-

mences with the month of application. 42 U.S.C. § 1382(c)(2). Therefore, SSI claimants whom the Secretary finds eligible subsequent to the month in which they applied are entitled to retroactive benefits for the period between application and acceptance. Since SSI is a needs-based program, any income the individual has will reduce his SSI benefits. Thus, in calculating the retroactive benefits due an individual, the Secretary is to consider the income received by the individual during the retroactive period. 42 U.S.C. § 1382(b).

The AFDC program is a state-administered welfare program for families with needy children. 42 U.S.C. §§ 601 *et seq.* This program is designed primarily for families, and Maryland pays benefits to an "assistance unit" composed of one or more individuals. *See* C.O.M.A.R. 07.03.02.02.

The Maryland AFDC program is an "incremental" program, that is, when an individual is added to or subtracted from the assistance unit, the benefit amount increases or decreases by less than a per capita amount. *See* C.O.M.A.R. 07.03.02.11. For example, an AFDC grant for a three-person assistance unit in Maryland is $270 per month. *Id.* If one person is taken out of the assistance unit for whatever reason, the grant is not reduced by one-third ($90) but only by $59, since the grant for a two-person unit is $211 per month. *Id.*

For the purposes of AFDC eligibility, the federal AFDC statute, 42 U.S.C. § 602(a)(24), requires states to disregard individuals in a household who are SSI recipients. As a result, when a member of an AFDC assistance unit begins receiving SSI benefits, that individual is no longer counted as a member of the AFDC unit. Thus, if an SSI application were approved on the day it was filed, the AFDC unit would immediately lose the incremental amount and the SSI applicant would begin to receive full SSI benefits.

Unfortunately, months often elapse before an SSI application is finally approved and it then becomes necessary to calculate the retroactive SSI benefits for the period between application and approval. This re-

quires a determination of the amount of the AFDC benefits paid to the SSI recipient's "assistance unit" that is to be attributed to the SSI recipient. In making this determination, the Secretary's policy is to reduce the SSI payments by the amount of "the AFDC payments made for the claimant" during the period in which his SSI application was pending. Social Security Administration Claims Manual § 12340.1A. There are two possible ways of calculating this amount. The incremental method attributes to the SSI recipient the difference in the amount of the AFDC grant before and after the exclusion of the SSI recipient from the assistance unit. The per capita method divides the total AFDC grant by the number of persons in the assistance unit and attributes that "per capita" portion to the SSI recipient as income.

In June, 1979, the Social Security Administration issued Regional Transmittal No. 417. That document requires that all Social Security district offices within Region II, which includes Maryland, use the per capita method in calculating retroactive SSI benefits where the SSI recipient was formerly a member of an AFDC assistance unit.

### A. *Plaintiff Fitzgerald*

Plaintiff Fitzgerald applied for SSI disability benefits in April, 1980, at which time she was receiving an AFDC grant for herself and her minor son. In December, 1980, an Administrative Law Judge in the Secretary's Office of Hearings and Appeals determined that Ms. Fitzgerald was disabled and therefore eligible for SSI benefits. In 1981, when she began to receive her SSI benefits of $238.00, the AFDC assistance unit was reduced from two persons to one and the AFDC grant was cut from $211.00 to $120.00 per month.

In January, 1981, Ms. Fitzgerald received a check from the Social Security Administration for $1,267.10, representing the retroactive payments for the months of April, 1980 through January, 1981, during which time her SSI claim was pending before the Social Security Administration. In computing the amount of retroactive SSI benefits

due her, the Social Security Administration attributed to her one-half of the family AFDC grant, or $105.50 per month, by using the per capita method required in Regional Transmittal No. 417. The incremental method would have attributed to her the difference between $211.00 and $120.00 per month, or $91.00 per month, and she would have received approximately $200.00 more in retroactive SSI benefits than she received under the per capita method. Ms. Fitzgerald requested that the decision to apply the per capita amount in her case be reconsidered. She was advised in a letter dated April 29, 1981, that "Section 1612(a) of the Social Security Law states that the per capita method will be used in all situations in order to determine the amount of funds available to an individual."

On June 24, 1981, Ms. Fitzgerald filed this action. On June 26, 1981, she filed an appeal to an Administrative Law Judge for review of the reconsidered determination. A decision was issued by the ALJ on August 24, 1981, concluding that the incremental method rather than the per capita method should have been used in computing her retroactive SSI benefits.

MOTION TO DISMISS

■ Defendants have moved to dismiss on the grounds that plaintiffs' claim is moot and that the Court lacks subject matter jurisdiction. As to the first contention, defendants argue that there is no case or controversy as a result of the decision by the ALJ on August 24, 1981, that the incremental method rather than the per capita method should have been used in determining Ms. Fitzgerald's retroactive SSI benefits. That decision clearly rendered the named plaintiff's claim moot; however, it does not render moot the claims of the other members of the class, which the Court has decided to certify, *see infra*.

Shortly after plaintiff Fitzgerald filed her complaint in this case, she filed her administrative appeal, and it was thus fore-seeable that she would only temporarily be in a position to assert the claim set forth in her federal complaint, since several ALJs had already ruled in favor of claimants situated identically to plaintiff. Moreover, "the constant existence of a class of persons suffering the deprivation is certain." *Gerstein v. Pugh*, 420 U.S. 103, 110–11 n.11, 95 S.Ct. 854, 861 n.11, 43 L.Ed.2d 54 (1975). Therefore, the claim is one that is "distinctly 'capable of repetition, yet evading review,'" *id.*, and the fact that the named plaintiff's claim has become moot before it could be resolved by this Court does not moot the claims of the other members of the class.[1] *Id. See Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

The court in *Adams v. Califano*, 474 F.Supp. 974, 984 (D.Md.1979), *aff'd sub nom., Adams v. Harris*, 643 F.2d 995 (4th Cir. 1981), rejected a claim of mootness under very similar facts. In *Jones v. Califano*, 576 F.2d 12, 21–22 (2d Cir. 1978), the court, facing facts virtually identical to those here, remanded the case to the lower court for consideration of the propriety of certifying the class of individuals who had filed claims with the Social Security Administration, had been found eligible and had received deficient payments for retroactive benefits. The court held explicitly that the fact that the named plaintiff had received full relief from an ALJ did not create a problem of mootness for the putative class.

In any event, the Court has decided to grant the motion of Robett Cromwell to intervene as party plaintiff. *See infra.* Since her claim is still alive, there is no issue of mootness as to the class as a whole.

■ Defendants' second ground for dismissal is lack of subject matter jurisdiction. Plaintiffs claim jurisdiction under sections 205(g) and 1631(c)(3), of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), and under 28 U.S.C. § 1361, the mandamus provision. The Court finds that it has subject matter jurisdiction under 42 U.S.C.

---

1. Moreover, the fact that the named plaintiff's claim has been rendered moot does not preclude certification of the class. *Gerstein, supra*, 420 U.S. at 110–11 n.11, 95 S.Ct. at 861 n.11. *See Sosna v. Iowa*, 419 U.S. 393, 402 n.11, 95 S.Ct. 553, 558 n.11, 42 L.Ed.2d 532 (1975).

§§ 405(g) and 1383(c)(3) and therefore need not reach the question of whether there is also jurisdiction under 28 U.S.C. § 1361.

Section 405(g) states in relevant part that:

> (g) Any individual, after any final decision of the Secretary made after a hearing to which he was a party . . . may obtain review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . .

Under the Secretary's regulations, the finality requirement for judicial review is generally achieved "only after the further steps of a hearing before an administrative law judge and, possibly, consideration by the Appeals Council." *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975) (hereinafter *Salfi*). In *Salfi*, the Court held that the Secretary may waive the exhaustion requirement and thus create subject matter jurisdiction in the federal court in which the claimant sues. In *Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976) (hereinafter *Eldridge*), the court held that the requirement that there be a final decision by the Secretary after a hearing consisted of two elements, one waivable and the other nonwaivable. The nonwaivable element is the requirement that the claimant shall have presented to the Secretary a claim for benefits, *id.*; the court reasoned that the statute requires at a minimum that there be some decision by the Secretary. *Id.* The waivable element is the requirement that the claimant exhaust the administrative remedies provided by the Secretary. *Id.* The Court concluded that in certain cases it may be proper for a court to waive the exhaustion requirement:

> *Salfi* suggested that under § 405(g) the power to determine when finality has occurred ordinarily rests with the Secretary since ultimate responsibility for the integrity of the administrative program is his. But cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate.

*Id.* at 330, 96 S.Ct. at 900.

Plaintiffs in this case have filed claims with the Secretary and have therefore met the nonwaivable jurisdictional requirement. However, plaintiffs have not exhausted their administrative remedies,[2] and the Secretary has not voluntarily waived the exhaustion requirement. Therefore, this Court has subject matter jurisdiction only if the Court finds it appropriate to waive the exhaustion requirement pursuant to the principle set forth in *Eldridge*.

Defendants argue that *Eldridge* does not apply to this case. They observe that the Supreme Court explicitly noted two features[3] of plaintiff's claim in *Eldridge* : (1) that it was a constitutional claim entirely collateral to the underlying claim for benefits and (2) that the claim is not recompensable by retroactive relief. Defendants contend that these are conditions that a claim must meet before it is appropriate for a court to waive the exhaustion requirement, and defendants argue that plaintiffs' claim here fails to meet the conditions.[4]

There is no indication that the Court in *Eldridge* intended these two elements to be

---

**2.** Since filing, the original named plaintiff Fitzgerald has exhausted her remedies. *See supra.*

**3.** Defendants actually break these down into three features: (1) that there is a colorable constitutional claim; (2) that the claim is entirely collateral to the entitlement claim and (3) that the claim is not recompensable by retroactive relief. These three categories are subsumed under the two discussed in the text, and the Court chooses to refer to the two categories actually identified by the Court in *Eldridge*.

**4.** If these two elements were conditions, defendants' would be partly correct, since the claim here probably fails to meet the first condition. A statutory claim that benefits are improperly computed is obviously not "entirely collateral" to the underlying claim for benefits in the way that a purely constitutional claim [seeking procedural relief] is entirely collateral. *Compare Eldridge* (involving a procedural due process claim that plaintiff was entitled to a hearing prior to the termination of his disability benefits) and *Salfi* (plaintiff claimed that a provision of the Social Security Act was unconstitutional on its face).

However, the claim here would meet the second "condition." Plaintiffs' claim would not be recompensable with retroactive relief granted to the plaintiffs on administrative appeal,

conditions precedent to a court's waiving exhaustion, and there is good reason to believe the contrary. Establishing two rigid prerequisites to court-determined waiver would constitute a very technical approach to the determination of finality, yet the Court explicitly approved a highly practical and result-oriented approach as the proper way to analyze finality questions:

> Decisions in different contexts have emphasized that the nature of the claim being asserted and the consequences of deferment of judicial review are important factors in determining whether a statutory requirement of finality has been satisfied. The role these factors may play is illustrated by the intensely "practical" approach which the Court has adopted [citation omitted] when applying the finality requirements of 28 U.S.C. § 1291, which grants jurisdiction to courts of appeals to review all "final decisions" of the district courts, and 28 U.S.C. § 1257, which empowers this Court to review only "final judgments" of state courts. [citations omitted] To be sure, certain of the policy considerations implicated in §§ 1257 and 1291 cases are different from those that are relevant here. [citations omitted] But the core principle that statutorily created finality requirements should, if possible, be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered remains applicable.

*Id.* at 331 n.11, 96 S.Ct. at 901 n.11.

It is evident that the Court employed precisely such a practical approach in *Eldridge*. The Court adopted a balancing test which weighs a claimant's interest in the prompt resolution of an issue against the general principle that an agency's procedures should be permitted to run their course. *See id.* at 330, 96 S.Ct. at 901. The Court noted that the claimant had a significant interest in the prompt resolution of his claim, since he was so dependent upon the benefits that he would suffer from any delay. *Id.* at 331, 96 S.Ct. at 901. On the other side of the equation, the Court gave little weight to the traditional deference to an agency's judgment as to finality. The Court observed that it is unrealistic to expect that the Social Security Administration would consider changing its procedure at the behest of a single claimant raising a constitutional challenge. *Id.* at 330, 96 S.Ct. at 900.[5] Therefore, applying the balancing test, the Court concluded that the case was one "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." *Id.*

In light of this balancing test, it is clear that the Court in *Eldridge* did not intend its observation that the claim there was a constitutional claim entirely collateral to the underlying claim for benefits to be interpreted as a holding that a court may waive the exhaustion requirement only when the claim is constitutional and entirely collateral. Therefore, this Court feels fully justified in adopting the holding of *Jones v. Califano*,[6] 576 F.2d 12 (2d Cir. 1978) (hereinafter *Jones*), and *Liberty Alliance of the*

because plaintiffs' poverty and dependence upon the benefits are such that plaintiffs suffer significantly from "mere" delay. *Jones* at 20–21. *See Eldridge* at 331, 96 S.Ct. at 901. *See infra.*

5. The Court used the quoted language to justify the conclusion that plaintiff had met the nonwaivable jurisdictional requirement of filing a claim. However, it is clear from the Court's reasoning that the same consideration of the agency's ability/willingness to deal with plaintiff's claim influenced its consideration of whether plaintiff should be required to exhaust his administrative remedies. *See id.* at 331–32, 96 S.Ct. at 901–02 ("... denying *Eldridge's* substantive claim 'for other reasons' or upholding it 'under other provisions' at the post termination stage, [citations omitted] would not answer his constitutional challenge.")

6. The facts of *Jones* are virtually identical to those here. The State of New York paid AFDC benefits on an incremental basis. However, the Secretary, in calculating retroactive SSI benefits, attributed AFDC income to the SSI recipient on a per capita basis. The Appeals Council of the Social Security Administration had on three separate occasions held that the per capita method was not proper, and an Administrative Law Judge had upheld the named plaintiff's claim on appeal. Plaintiff class challenged the Secretary's use of the per capita method.

*Blind v. Califano*,[7] 568 F.2d 333, 345–46 (3d Cir. 1977), that the *Eldridge* doctrine allowing courts to waive the § 405(g) exhaustion requirement is applicable in cases involving statutory claims, when the balancing test indicates that it is inappropriate to require exhaustion.[8]

Applying this balancing test to the case at hand, it becomes clear that the equities favor the claimant class and that it is appropriate for the Court to waive the exhaustion requirement. *Jones, supra*.[9] Looking first at the claimants' side of the equation, it is as true here as in *Eldridge* that claimants' poverty and resulting dependence upon the benefits make claimants' peculiarly sensitive to delay in the receipt of even small amounts of benefits. *See supra* and *Jones* at 20–21. It is a serious imposition to force them to appeal to an ALJ or to the Appeals Council in order to obtain their benefits, because benefits delayed are benefits denied. Moreover, some claimants presumably do not have the knowledge or energy to appeal a decision which grants them some benefits and therefore appears to be favorable. The system of forcing claimants to appeal in order to obtain the proper amount of benefits thus denies some claimants the increased benefits altogether. Both classes of claimants, those subjected to delay and those who fail to appeal, have a significant interest in prompt resolution of the class' claim that the Secretary's method of computation is improper.

Looking at the agency side of the equation, it is equally unrealistic here as in *Eldridge* to expect that the Social Security Administration would consider changing its procedure as a result of a challenge from a single claimant. *See Jones* at 20. Secondly, and most significantly, defendants have made it quite clear, in their letters to plaintiffs' counsel and their answers to interrogatories, that they have no intention of altering their method of calculating SSI benefits, in the absence of legislative direction or a court order. Such a final position of the Secretary is the equivalent of a final decision, under the *Eldridge* analysis, because it is a clear indication that no purpose is served in requiring claimants to exhaust their administrative remedies. *Jones* at 19; *Liberty Alliance of the Blind, supra*, 568 F.2d at 346.

> Exhaustion is traditionally required:
>
> as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise and to compile a record which is adequate for judicial review.

*Salfi* 422 U.S. at 765, 95 S.Ct. at 2466. None of these reasons applies when the agency has announced a policy of limiting benefits and refuses to change that policy in light of consistent reversals by ALJs and the Appeals Council. In such a situation,

---

7. In *Liberty Alliance*, plaintiffs sued over the interpretation of the Social Security Act as to what other income should be disregarded in calculating a blind individual's SSI benefits. The court held that the test for exhaustion was whether the Secretary has taken a "final position" on the issue. The court concluded that the Secretary's statements, in negotiations with the *Alliance*, that the Department would not change its interpretation of the statute constituted a final position and that therefore there was no need for plaintiffs to exhaust their administrative remedies before filing suit in federal court.

8. *See also Kennedy v. Harris*, 87 F.R.D. 372 (S.D.Cal.1980). In that case, a class action challenging a Department of Health and Human Services policy regarding what income of

the "assistance unit" is counted in determining SSI benefits, only one member of the class had exhausted his remedies. The court held that since the Secretary had denied that plaintiff's claim on the basis of "policy" and had made clear the Department's intent to continue that policy, there was no reason to require the other members of the class to exhaust their remedies. While the opinion did not make it explicit, it is clear that this Court in effect applied the *Eldridge* waiver doctrine to a purely statutory claim.

9. While the opinion in *Jones* does not explicitly refer to a balancing test, it is clear, from the extensive discussion of what is "fair" under the unusual circumstances of that case, that the court applied such a pragmatic approach to the issue of finality.

the agency has had full opportunity to function efficiently. It has shown itself unwilling to correct its own errors, except on a case-by-case basis that creates serious inequities by discouraging some claimants from appealing and by delaying payment to the remaining claimants. Finally, the agency's hard and fast rule makes it unnecessary for the agency to apply its expertise to compile factual records of individual cases for review purposes. *See Jones* at 18.

For all these reasons, the Court finds that the balance comes down heavily in favor of the plaintiff class, because they have a significant interest in prompt resolution of their claim and because there is nothing to be gained by further administrative review.

Moreover, an examination of the practical "consequences of deferment of judicial review, *Eldridge* 424 U.S. at 331 n.11, 96 S.Ct. at 901 n.11, suggests that it is necessary for the Court to waive the exhaustion requirement in order to avoid an injustice. If the Court finds no jurisdiction because claimants have failed to exhaust, the Secretary will continue to require each individual to exhaust his administrative remedies. Assuming that the Appeals Council continues to rule in favor of claimants, no claimant would ever have standing to seek judicial review. As the Second Circuit noted:

> [t]he SSA could operate indefinitely, as it does now, with two standards of benefit calculation, one for claimants \who seek review by the Appeals Council, and one for claimants who do not. By doing nothing the Secretary could effectively evade judicial review for the many claimants who fail to contest the per capita method.

*Jones* at 19. This Court concurs in the following analysis of the Second Circuit:

> Such a result would scarcely comport with the "basic human claim that the law should provide like treatment under like circumstances." [citation omitted].
>
> \* \* \* \* \* \*
>
> Agencies may not "treat similar situations in dissimilar ways." [citation omitted]
>
> \* \* \* \* \* \*

Thus, we find it appropriate to imply a waiver of the exhaustion requirement when, as in this case, there is a stalemate defying judicial review.

*Id.* at 20.

Because the balancing test and an examination of the consequences of deferring judicial review both suggest that finality should be liberally construed in this case, the Court finds that the Secretary, by adopting the policy of using the per capita method of calculating SSI benefits, has constructively waived the exhaustion requirement under § 405(g). *See Jones* at 21. Since all members of the class have filed claims with the Secretary and thus meet the non-waivable jurisdictional requirement of § 405(g), this Court has subject matter jurisdiction.

## CLASS CERTIFICATION

■  Plaintiffs seek to certify a class consisting of:

> all those persons in the State of Maryland who on or after the sixtieth (60th) day prior to the filing of the Complaint in this action (a) have applied for SSI benefits, (b) have had their claim for SSI approved by the Social Security Administration, (c) have been determined to be eligible for retroactive SSI benefits for a period during which they received state AFDC benefits, and (d) have been denied their full retroactive benefits due to the defendants' use of the per capita method of calculation under Regional Transmittal No. 417.

Defendants oppose class certification on three grounds. First, they argue that the class includes individuals who have not exhausted their administrative remedies. However, the Court has decided to waive the exhaustion requirement. *See supra.*

Defendants next attempt to raise the same argument in different garb. They argue that the claimants who received benefits and did not administratively appeal the issue of the method of computation have failed to file a claim with the Secretary with respect to that issue and there-

fore have failed to meet the non-waivable requirement of § 405(g). This argument, if accepted, would nullify the distinction drawn in *Eldridge* between the non-waivable jurisdictional requirement of filing a claim and the waivable jurisdictional requirement of exhaustion, because no claimant would have "filed" a claim with the Secretary until he appealed the initial decision on his benefits. This explains why the Court in *Eldridge* explicitly rejected this argument:

> The fact that *Eldridge* failed to raise with the Secretary his constitutional claim to a pretermination hearing is not controlling. As construed in *Salfi*, § 405(g) requires only that there be a "final decision" by the Secretary with respect to the claim of entitlement to benefits.

*Eldridge* at 329, 96 S.Ct. at 900.

Defendants' final argument is that plaintiffs have failed to satisfy the numerosity requirement of F.R.Civ.P. 23(a)(1). Plaintiffs have responded with a more precise estimate of the size of the class. In March, 1978, 3,103 SSI recipients in Maryland lived in AFDC households; this figure represents 6.4% of all SSI recipients in the state. Applying this 6.4% figure to the 5,245 individuals who are found eligible for SSI benefits in Maryland in the course of an average year, it is reasonable to estimate that every year in Maryland approximately 336 members of AFDC assistance units are determined eligible for SSI and thus fall into plaintiffs' class.

■ Where it is difficult to determine class size with precision, plaintiff need make only a reasonable estimate of the number of class members. *Long v. Thornton Tp. High School District 205*, 82 F.R.D. 186 (N.D.Ill.1979); 3B Moore's Federal Practice ¶ 23.05[3] at 23–161. *See Senter v. General Motors Corporation*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976) (held numerosity requirement met where class consisted of all Black employees who were denied promotional opportunities and where plaintiff showed that during the relevant period Blacks represented 14% of the defendant's workforce). In fact, where the relief sought is injunctive, "even 'speculative and conclusory representations' as to the size of the class suffice as to the requirement of many." *Doe v. Charleston Area Medical Center, Inc.*, 529 F.2d 638, 645 (4th Cir. 1975). Plaintiffs' good faith estimate of the size of the class clearly is sufficient to establish numerosity.

Since the proposed class clearly meets the remaining requirements of Rule 23, the Court grants the motion to certify the class.

## MOTIONS TO INTERVENE

■ The Court grants the motion of Robett Cromwell to intervene as party plaintiff. Her claim raises precisely the same questions of law as does plaintiff Fitzgerald's claim and at this early stage in the litigation, intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. *See* F.R. Civ.P. 24(b). Even where a class has not yet been certified at the time the named plaintiff's claim becomes moot, intervention of a new named plaintiff is appropriate. *Doe v. Lally*, 467 F.Supp. 1339, 1342 (D.Md. 1979). *Cf. Goodman v. Schlesinger*, 584 F.2d 1325, 1332–33 (4th Cir. 1978) (where district court properly found against the three named plaintiffs but improperly denied class certification before plaintiffs had an opportunity to discover and present evidence supporting class certification, the Fourth Circuit remanded with instructions that the district court permit other members of the putative class to come forward and attempt to justify class certification). This result is clearly implied in the holding in *Gerstein, supra*, 420 U.S. at 110–11 n.11, 95 S.Ct. at 861 n.11, that the fact that the named plaintiff's claim has become moot since the filing of the complaint does not preclude class certification.

Mary Cooper also filed a motion to intervene as party plaintiff. However, since she filed that motion, she has received a favorable decision from an Administrative Law Judge. Therefore, no purpose would be served in allowing her to intervene, and the Court denies her motion.

## THE MERITS

■ Subchapter XVI of the Social Security Act governs Supplemental Security Income (SSI) benefits. 42 U.S.C. §§ 1381 *et seq.* The Act establishes the basic entitlement as follows:

[e]very aged, blind, or disabled individual who is determined under part A to be eligible on the basis of his income and resources shall, in accordance with and subject to the provisions of this subchapter, be paid benefits by the Secretary of Health, Education, and Welfare [now the Secretary of Health and Human Services].

42 U.S.C. § 1381a. In calculating the retroactive benefits due an individual, the Secretary is to consider the income received by the individual during the retroactive period. 42 U.S.C. § 1382(b). Unearned income is defined in 42 U.S.C. § 1382a(a)(2) as "support and maintenance furnished in cash or kind." Since the statute does not exclude AFDC payments as income, 42 U.S.C. § 1382a(b), they must be counted. The statute does not expressly provide for a method of calculating such income. However, the plain meaning of the language "support and maintenance *furnished* in cash or kind," 42 U.S.C. § 1382a(a)(2) (emphasis added), indicates that no "calculation" is required, and that the Secretary is simply to consider the support payments actually made to the individual.

Furthermore, Congress has dealt expressly with the potential overlap between federal SSI benefits and state AFDC benefits in Subchapter IV of the Social Security Act, governing AFDC. This statute provides:

(a) A State claim for aid and services to needy families with children must—

\* \* \* \* \* \*

(24) provide that if an individual is receiving benefits under subchapter XVI of this chapter [SSI], then, for the period for which such benefits are received, such individual shall not be regarded as a member of a family for purposes of determining the amount of the benefits of the family under this subchapter [AFDC] and his income and resources shall not be counted as income and resources of a family under this chapter.

42 U.S.C. § 602(a)(24). The purpose of the statute is to prevent double-dipping by eliminating the overlap between (1) an individual's SSI benefits and (2) the portion of AFDC benefits "attributable" to the individual (*i.e.*, the amount of AFDC benefits which the individual's family receives as a result of that individual's presence in the assistance unit).[10] In a state such as Maryland, which calculates AFDC payments on an incremental basis [11] (*i.e.*, with a smaller payment for each additional member of the assistance unit), the amount of AFDC benefits that is attributable to the individual found eligible for SSI benefits is the difference, or increment, between the AFDC payments made to the assistance unit when that individual is included in the assistance unit and the payment made when he is not included.

The statute clearly deals with prospective SSI benefits (*i.e.*, those starting when the Secretary determines an individual to be eligible). The question of statutory interpretation before the Court is whether this statute can be applied to retroactive SSI benefits (*i.e.*, those covering the period between the time the individual applies and the time he is found eligible). The statute cannot be read to apply literally to retroactive SSI payments, because by the time

---

**10.** This characterization follows from the language in the statute providing that an individual who begins receiving SSI benefits "shall not be regarded as a member of a family for purposes of determining the amount of the benefits of the family under this subchapter [AFDC]." 42 U.S.C. § 602(a)(24).

**11.** Inexplicably, defendants attempt to support their use of the per capita method by arguing that the Secretary merely adopts Maryland's method of calculating benefits on a per capita basis and that the State has great discretion in such matters. This defense fails for the simple reason that Maryland calculates AFDC benefits, on an incremental, rather than a per capita basis. *See Jones* at 17 (where, despite the fact that New York clearly used an incremental method, the Secretary argued that he relied upon the state's use of the per capita method).

those SSI benefits are paid, full AFDC payments have already been made and there is no issue as to the proper method of calculating the AFDC payments.

▐▌ However, the intent of the statute is readily applied to the retroactive period.[12] The statute covers "the period for which such [SSI] benefits are received" and therefore governs the payment of all SSI benefits, both prospective and retroactive. Thus, it is clear that Congress intended to eliminate double-dipping with respect to all SSI payments, and it follows that when retroactive SSI payments are made for a period during which the individual received AFDC payments, the potential overlap should be treated in the same manner as is the potential overlap between prospective SSI benefits and AFDC payments. *See Jones* at 17. To correct for the potential overlap in retroactive SSI benefits, it is not possible to reduce the family's AFDC benefits by the increment attributable to the individual (as is done in Maryland in correcting for the potential overlap in prospective SSI benefits), since the full AFDC benefits have already been paid to the family. However, precisely the same end can be achieved by reducing the individual's retroactive SSI payments by the increment of AFDC benefits attributable to him during the period. Reducing the retroactive SSI payments by the individual's per capita portion of the AFDC benefits decreases his SSI benefits by more than enough to eliminate the overlap and thus serves no purpose that can be gleaned from the statute. Moreover, since the use of the per capita method produces smaller total benefits (AFDC and SSI combined) for the retroactive period than for the prospective period, that system penalizes SSI recipients solely because of

the Secretary's delay in processing SSI applications. That consequence bears no relation to the purpose of the statute, and the statute should be interpreted so as to avoid such an irrational result.[13]

For all these reasons, the Court interprets the statute, 42 U.S.C. § 602(a)(24), to require the Secretary to reduce retrospective SSI benefits by the same amount as the State would reduce AFDC benefits to the family of an individual who begins receiving prospective SSI benefits. In Maryland this means that retroactive SSI benefits should be reduced by the increment of AFDC benefits attributable to the individual. *Jones* at 17 (identical holding as to SSI benefits and New York AFDC benefits).

Because the issue can be decided on statutory grounds, the Court does not reach plaintiffs' claim that the Secretary's policy violates plaintiffs' equal protection rights.

For the reasons stated herein, it is this 10th day of May, 1982, by the United States District Court for the District of Maryland, ORDERED:

1. That the motion of Robett Cromwell to intervene as a party plaintiff BE, and the same IS, hereby GRANTED;

2. That the motion of Mary Cooper to intervene as a party plaintiff BE, and the same IS, hereby DENIED;

3. That the motion for certification of the class BE, and the same IS, hereby GRANTED;

4. That defendants' motion to dismiss BE, and the same IS, hereby DENIED; and

5. That summary judgment BE entered in favor of the PLAINTIFFS.

---

12. "Where the words and purpose of a statute plainly apply to a particular situation, however, the fact that the specific application of the statute never occurred to Congress does not bar us from holding that the situation falls within the statute's coverage." *U. S. v. Jones*, 607 F.2d 269, 273 (9th Cir. 1979).

13. *See New York State Commission on Cable Television v. F.C.C.*, 571 F.2d 95, 98 (2d Cir. 1978) ("The appropriate methodology, then, is

to look at the 'common sense' of the statute or regulation, to its purpose, to the practical consequences of the suggested interpretations, and to the agency's own interpretation for what light each inquiry might shed.") *Accord, Southeastern Community College v. Davis*, 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979). *See also Peed v. Cleland*, 516 F.Supp. 469 (D.Md.1981) (interpreting statute to avoid an "absurd" result).