William R. WHITE, Madeleine Hyman and Juan Rosario, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Margaret M. HECKLER, as Secretary of the Department of Health and Human Services, Defendant.

No. 85 Civ. 1493 (RLC).

United States District Court, S.D. New York.

Oct. 24, 1985.

Westchester Legal Services, Inc., White Plains, N.Y., Joan Mangones, The Legal Aid Society, Staten Island, N.Y., John Kirklin, The Legal Aid Society, Civil Appeals & Law Reform Unit, Marshall Green, The Legal Aid Society, New York City, for plaintiffs; Joy Blumkin, White Plains, N.Y., Douglass J. Seidman, Staten Island, N.Y., Nancy Morawetz and Stephen J. Loffredo, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., for the S.D. of N.Y., New York City, for defendant; Donna H. Lieberman, Sp. Asst. U.S. Atty., Annette H. Blum, Regional Atty., Region II, David Engel, Asst. Regional Atty., Dept. of Health and Human Services, of counsel.

## OPINION

ROBERT L. CARTER, District Judge

This case is before the court on plaintiffs' motion for class certification pursuant to Rule 23(a) and (b)(2) or, in the alternative, (b)(1)(A), F.R.Civ.P. Plaintiffs are three individuals whose applications for Old Age, Survivors and Disability Insurance ("OASDI") benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* were considered concurrently by the Social Security Administration ("SSA"). Plaintiff White was awarded retroactive benefits under both programs; plaintiffs Hyman and Rosario were awarded retroactive OASDI benefits.[1] This lawsuit challenges the way in which the Secretary computed and paid their retroactive OASDI benefits. Plaintiffs seek to represent "all persons residing in New York State who concurrently applied for, or were concurrently determined eligible for, disability benefits under Titles II and XVI of the Social Security Act and whose retroactive Title II benefits were or will be reduced by defendant because defendant has paid or will pay to a local social services agency an amount alleged to be the benefit recipient's retroactive SSI benefits." First Amended Complaint, ¶ 10.

## FACTS

Plaintiffs all filed simultaneous, or nearly simultaneous, applications for OASDI and SSI benefits. In each claim, an administrative law judge ("ALJ") found plaintiff disabled within the meaning of the Social Security Act, and hence eligible for OASDI benefits. These findings also permitted plaintiffs to meet the disability requirement for SSI benefits.[2] In each instance,

---

1. Benefits under both programs are awarded retroactively from the date eligibility is determined to the date of the claimant's application. Under Title II, benefits may also be awarded retroactively for up to twelve months prior to application. 20 C.F.R. § 404.621.

Plaintiffs were also awarded prospective benefits. They do not challenge the way in which those benefits are calculated or offset.

2. OASDI and SSI share the same definition of disability for purposes of determining eligibility. In addition, however, the SSI program requires that a claimant's income and resources fall below a certain minimum subsistence level. 42 U.S.C. § 1382. OASDI payments are not income-based, but are awarded on the basis of the claimant's (or claimant's family member's) past earnings in covered employment.

the Secretary calculated retroactive SSI benefits for the claimant as though the claimant were not eligible for OASDI, and sent that full payment to the relevant state social service agency.[3] Plaintiffs White and Rosario apparently received a portion of this payment; the local social service agency retained the rest. All of the payment designated for plaintiff Hyman was withheld. The Secretary then calculated the OASDI payment due for each claimant's retroactive benefits by subtracting the full amount that had been forwarded to the local social service agency. This method of calculating concurrent retroactive benefits is mandated by an internal SSA memorandum, Program Operations Manual System ("POMS") §§ GN2610.005 and GN2610.045. POMS is not published in the Federal Register or promulgated pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* All three plaintiffs sought reconsideration of these decisions. As of the time of the complaint, the SSA had not yet responded to plaintiff Rosario's or plaintiff Hyman's request. An ALJ affirmed the reduction of plaintiff White's benefits, and the Appeals Council denied his request for review of that decision. Thus, only plaintiff White has exhausted the administrative appeals process. *See* 20 C.F.R. 404.900 *et seq.* Other persons falling within the proposed class report SSA recalcitrance in their attempts to challenge similar calculation of retroactive benefits. *See* Jackson and Guichardo Affidavits.

Plaintiffs charge that the Secretary's method of calculating retroactive OASDI benefits illegally deprives them of payments that they are eligible to receive. Specifically, they claim that the Secretary's policy violates: federal regulations, i.e. 20 C.F.R. §§ 404.408 and 416.1123(d); certain provisions of the Social Security Act, 42 U.S.C. §§ 407 and 1320a–6; and the Due Process clause of the Fifth Amendment to the Constitution of the United States. In addition, they claim that the way in which this policy was promulgated and implemented violates the APA; the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Federal Register Act, 44 U.S.C. § 1501 et seq.

Defendant would impose three restrictions on the proposed class. She argues that it should be limited to plaintiffs who have (1) fulfilled the requirements of § 405(g) by (a) exhausting their administrative remedies (b) no more than 65[4] days before the filing of this suit and (2) before February 1, 1985, the effective date of the amended version of 42 U.S.C. § 1320a–6.[5]

---

**3.** The Secretary sent $5,666.36 to the Westchester County Department of Social Services ("WCDSS") for plaintiff White, $2,785.28 to the New York City Department of Social Services ("NYCDSS") for plaintiff Hyman, and $4,374.91 to NYCDSS for plaintiff Rosario.

**4.** Although the statutory limitation is sixty days after the Secretary renders a final decision, the Secretary allows an additional five days to assure receipt of that decision. 20 C.F.R. § 422.-210(c).

**5.** § 1320a–6 formerly read:
Notwithstanding any other provision of this chapter, in any case where an individual—
(1) makes application for benefits under subchapter II of this chapter and is subsequently determined to be entitled to those benefits, and
(2) was an individual with respect to whom supplemental security income benefits were paid under subchapter XVI of this chapter (including State supplementary payments which were made under an agreement pursuant to section 1382e(a) of this title or an administration agreement under section 212 of Public Law 93–66) for one or more months during the period beginning with the first month for which a benefit described in paragraph (1) is payable and ending with the month before the first month in which such benefit is paid pursuant to the application referred to in paragraph (1), the benefits (described in paragraph (1)) which are otherwise retroactively payable to such individual for months in the period described in paragraph (2) shall be reduced by an amount equal to so much of such supplemental security income benefits (including State supplementary payments) described in paragraph (2) for such month or months as would not have been paid with respect to such individual or his eligible spouse if the individual had received the benefits under subchapter II of this chapter at the times they were regularly due during such period rather than retroactively; and from the amount of such reduction the Secretary shall reimburse the State on behalf of which such

## DISCUSSION

### I. Section 405(g)

Challenges to the SSA's determination of a claim must be raised pursuant to 42 U.S.C. § 405(g). *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). Section 405(g) reads, in relevant part:

> Any individual, after any final decision by the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days of the mailing to him of such decision or within such further time as the Secretary may allow.

The "final decision," or exhaustion requirement, is jurisdictional; the sixty-day requirement, however, is merely a statute of limitation. *Weinberger v. Salfi,* 422 U.S. at 764, 95 S.Ct. at 2466.

### A. Exhaustion

In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court interpreted § 405(g) by breaking administrative exhaustion into two separate elements, one waivable, the other not. "The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The non-waivable element is the requirement that a claim for benefits shall have been presented to the Secretary." *Id.* at 328, 96 S.Ct. at 899.

The plaintiff class clearly satisfies the "presentment" component; all members of the class have applied for benefits and have been determined eligible for some retroactive benefits. Defendant conflates the presentment and exhaustion elements of § 405(g) when she argues that these plaintiffs have not presented their claims because they have not made independent claims for the amounts withheld. Having presented their claims once they need not present them again. *Fitzgerald v. Schweiker,* 538 F.Supp. 992 (D.Md.1982).

■ Just as clearly, the proposed class does not satisfy the exhaustion require-

---

supplementary payments were made for the amount (if any) by which such State's expenditures on account of such supplementary payments for the period involved exceeded the expenditures which the State would have made (for such period) if the individual had received the benefits under subchapter II of this chapter at the times they were regularly due during such period rather than retroactively. An amount equal to the portion of such reduction remaining after reimbursement of the State under the preceding sentence will be covered into the general fund of the Treasury.

The section, as of February 1, 1985, now reads:

(a) Notwithstanding any other provision of this chapter, in any case where an individual—

(1) is entitled to benefits under subchapter II of this chapter that were not paid in the months in which they were regularly due; and

(2) is an individual or eligible spouse eligible for supplemental security income benefits for one or more months in which the benefits referred to in clause (1) were regularly due, then any benefits under subchapter II of this chapter that were regularly due in such month or months, or supplemental security income benefits for such month or months, which are due but have not been paid to such individual or eligible spouse shall be reduced by an amount equal to so much of the supplemental security income benefits, whether or not paid retroactively, as would not have been paid or would not be paid with respect to such individual or spouse if he had received such benefits under subchapter II of this chapter in the month or months in which they were regularly due.

(b) For purposes of this section, the term "supplemental security income benefits" means benefits paid or payable by the Secretary under subchapter XVI of this chapter, including State supplementary payments under an agreement pursuant to section 1382e(a) of this title or an administration agreement under section 212(b) of Public Law 93–66.

(c) From the amount of the reduction made under subsection (a) of this section, the Secretary shall reimburse the State on behalf of which supplementary payments were made for the amount (if any) by which such State's expenditures on account of such supplementary payments for the month or months involved exceeded the expenditures which the State would have made (for such month or months) if the individual had received the benefits under subchapter II of this chapter at the times they were regularly due. An amount equal to the portion of such reduction remaining after reimbursement of the State under the preceding sentence shall be covered into the general fund of the Treasury.

ment. Two of the named plaintiffs, Rosario and Hyman, are still in the process of pursuing administrative remedies. The Secretary has not waived exhaustion. Yet the court is not bound to defer to the Secretary's choice where a plaintiff has a great enough interest in obtaining prompt judicial review. *Mathews v. Eldridge,* 424 U.S. at 330, 96 S.Ct. at 900. The court's task of analyzing the magnitude of a plaintiff's interest is guided by the recent decision of the Second Circuit Court of Appeals in *City of New York v. Heckler,* 742 F.2d 729 (2d Cir.1984), *cert. granted,* —— U.S. ——, 106 S.Ct. 57, 88 L.Ed.2d 46 (1985), and by the court's decision in *State of New York v. Heckler,* 105 F.R.D. 118 (S.D.N.Y. 1985) (Carter, J.). Three factors determine whether judicial waiver of the exhaustion requirement is appropriate: a legal claim that is collateral to the claim for benefits; futility in pursuing administrative remedies; and irreparable harm resulting from any delay. No one of these factors is determinative. The Second Circuit has "adopted a more general approach, balancing the competing considerations to arrive at a just result under the circumstances presented." *City of New York,* 742 F.2d at 736.

Collaterality is apparent. Plaintiffs challenge the way in which their benefits, for which they are indisputably eligible, are calculated. As in *City of New York* and *State of New York,* both of which challenged the Secretary's use of presumptions in determining the existence of a disability, plaintiffs complain of a "procedural irregularity and not of the Secretary's substantive standards of eligibility." *City of New York,* 742 F.2d at 737. The legal claim is wholly grounded in the interpretation of various statutes and regulations, not in the application of any standards to the plaintiffs' individual claims. *See McKenzie v. Heckler,* 602 F.Supp. 1150, 1155 (D.Minn. 1985).

Futility is also apparent. The POMS guidelines assure that the original SSA cal-

culation of benefits will be affirmed by every decisionmaker in the administrative review process. The SSA itself acknowledges the futility of appeal; affidavits submitted with the class certification motion show that SSA employees are discouraging appeals sought by members of the proposed class. *See* Jackson Affidavit, ¶ 14; Guichardo Affidavit, ¶ 18.

Weighed against these factors is the lack of irreparable harm. Plaintiffs are not challenging the way in which prospective benefits are calculated. Any harm here— the failure to receive benefits for which they are eligible—occurred before this lawsuit was initiated. Unlike the case in *City of New York,* in which wrongful denials of benefits and the appellate process itself would affect the mental health of the proposed class, there is no plausible assertion that delay would wreak independent harm on these plaintiffs.[6]

Absence of irreparable harm does not, by itself, render waiver inappropriate. The court must weigh all three factors. Here, the balance favors waiver. Moreover, the chief justifications for the policy of administrative exhaustion—error correction, record creation, and agency expertise, *Weinberger v. Salfi,* 422 U.S. at 765, 95 S.Ct. at 2466—would not be furthered by requiring exhaustion here. Because the POMS mandates the challenged calculation, SSA perceives no error to correct. Because the case turns on the interpretation of statutes and regulations collateral to any individual's claim, any claimant's administrative record is irrelevant. And though the SSA's expertise entitles it to some deference to its substantive interpretation of the Social Security Act, *see, e.g. Quern v. Mandley,* 436 U.S. 725, 738, 98 S.Ct. 2068, 2076, 56 L.Ed.2d 658 (1978), that interest does not justify deference to agency procedure under these circumstances.

*B. Sixty-Day Limitation*

■ As in *State of New York,* the procedures complained of here were not formally

---

**6.** Delayed receipt of retroactive benefits was held to cause irreparable harm in the context of SSI benefits, which, unlike OASDI benefits, are

need-based. *Fitzgerald v. Schweiker,* 538 F.Supp. 992 (D.Md.1982); *Wilson v. Heckler,* 580 F.Supp. 1387 (D.D.C.1984).

published by the defendant. Plaintiffs charge that this failure violated duties imposed on the SSA by the APA, FOIA, and Federal Register Act. Without looking to the merits of these claims, plaintiffs' allegations are sufficient to toll the sixty-day statute of limitations imposed by § 405(g). *City of New York*, 742 F.2d at 738; *State of New York*, 105 F.R.D. at 124. It is irrelevant that the Secretary's policy has been revealed in the pages of the Federal Supplement in cases such as *McKenzie v. Heckler, supra*, or *Gallo v. Heckler*, 600 F.Supp. 1513 (E.D.N.Y.1985); plaintiffs charge violations of statutory obligations.

Thus, the court has jurisdiction over the proposed plaintiff class pursuant to § 405(g). Because the court does possess the power to hear this case, we need not rule on the alternative bases of jurisdiction presented by plaintiffs, mandamus jurisdiction pursuant to 28 U.S.C. § 1361, or federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### II. F.R.Civ.P. Rule 23

 Now that it has been determined that the proposed plaintiff class is able to bring suit in this court, we must determine whether the class action prerequisites of Rule 23, F.R.Civ.P. are satisfied. The court, like the Minnesota district court that certified a similar class of Minnesota residents, has no difficulty in finding that the necessary class action yardsticks have been met. *See McKenzie v. Heckler, supra.* An estimate based on the decision in *McKenzie* asserts that the proposed class numbers at least 11,750 claimants. *See* Seidman Affidavit, ¶ 5. This figure clearly satisfies the numerosity requirement. The legal issues of statutory and regulatory interpretation are common to each member of the class. The named plaintiffs are typical of the proposed class: they are claimants whose eligibility for both OASDI and SSI was determined concurrently; defendant paid SSI benefits designated for them to a local social service agency. Their attorneys are clearly qualified to pursue the class's interests with vigor. Thus, the class meets the requirements of Rule 23(a),

F.R.Civ.P. In addition, the class satisfies Rule 23(b)(2), F.R.Civ.P. The Secretary's guidelines have been used to calculate the benefits of the class as a whole; the class requests injunctive relief.

Finally, defendant argues that the proposed plaintiff class should be limited to claimants whose benefits were calculated prior to February 1, 1985, the effective date of amended § 1320a-6. Plaintiffs, however, argue that the Secretary's practice violates both versions of the statute. It is too early for the court to determine whether the amendment legalized the Secretary's purportedly unlawful actions. That determination would embroil the court in the kind of premature analysis of the merits that is barred by *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). Moreover, there are several other statutes and regulations whose interpretation is at issue here. Even if the amendment did alter the legal issues as to the legality of the Secretary's actions under § 1320a-6, the other common legal issues justify class certification.

The motion is granted.

IT IS SO ORDERED.